WILLIAM SHEPPARD, Respondent, *v.* JOHN T. STEELE, STEPHEN H. MILLS, CHARLES C. MORE, Administrator, and SARAH C. MORE, Administratrix, of WILLIAM C. MORE, Deceased, Appellants.

A claim for labor performed, and materials furnished upon and for the hull of a vessel, while in the process of construction before launching, is not a claim upon a maritime contract, and not within the jurisdiction of the admiralty courts. . The lien law of 1862, entitled "An act to provide for the collection of demands against ships and vessels," giving a lien on the vessel for such labor and materials, and providing for the enforcement thereof *in rem*, is, as to such contracts, constitutional and valid, and no infringement upon the federal maritime jurisdiction.

*In re* Steamboat Josephine (39 N. Y., 19), commented upon and distinguished.

The act is not unconstitutional, as infringing upon the right of trial by jury. Liens were given, in such cases, before the Constitution of 1846, which were enforceable in equity without a jury. They are not, therefore cases where, within that Constitution (Art. 1, § 2), a trial by jury had theretofore "been used."

Where, within the twelve days after the vessel shall leave the port where the debt was contracted, an application shall have been made to the proper officer for an attachment, and the vessel shall have been seized under such attachment, and released therefrom by the giving of a bond in accordance with the act, it is immaterial to the right of action upon the bond, whether or not a specification of the claim shall have been filed within such twelve days.

Where a payment is made upon general account, with no direction as to its application by the debtor, the law applies it to the oldest items. And where the account is composed of distinct "causes of account," and no direction is given by the debtor, the creditor may apply it, at the time, to that one of them he chooses, or if he make no application at the time, he may do so subsequently, if not prejudicial to the debtor.

(Argued October 19th, 1870; and decided October 25th, 1870.)

APPEAL from a judgment of the General Term in the third district, affirming a judgment entered upon the report of a referee in favor of the plaintiff against the defendant.

The action was upon a bond given by William C. More and the defendants, Steele and Mills, dated September 12th,

1866, under and by virtue of an act of the legislature of the State of New York, passed April 24th, 1862, entitled "An act to provide for the collection of demands against ships and vessels. The plaintiff introduced in evidence on the trial, the application for attachment, specifications, and attachment with the sheriff's return, all of which (except the attachment) were filed in the Ulster county clerk's office, September 12th, 1866. The only specification of lien ever filed, was that annexed to the application, consisting of a bill of items of iron work, and the prices of each carried out opposite the item. The application with this specification attached, was presented to the Ulster county judge on the 12th of September, 1866, and immediately afterward filed.

The lien claimed, arose from the following circumstances: Jacob Fox, a shipbuilder, during the summer and autumn of 1866, built or nearly completed on his shipyard, at South Rondout, on the south side of Rondout creek, in the county of Ulster, a three masted schooner, a sea going vessel, and the plaintiff, a blacksmith employed by Fox, did blacksmith work on the schooner, the value of which was $498.48.

The Rondout creek discharges into the Hudson river, near the village of Rondout, and is navigable by large vessels from the river to Eddyville, a distance of two miles above Wilbur, and the tide ebbs and flows as far as Eddyville. The schooner was launched at South Rondout on the 8th day of September, 1866, and on the same day taken to Wilbur above mentioned, where she remained until seized on the 12th day of September, 1866, under the attachment issued by the county judge to enforce the plaintiff's lien, and the bond in suit was given the next day, discharging from the attachment. Some payments had been made to the plaintiff by Fox, which when deducted from his total account for work upon the other vessels, left a balance larger than the lien claimed.

Objections were taken by the defendants on the trial, that no specifications had been filed within twelve days after the vessel left South Rondout. Certain offers of proof were also made by them as to the payment of the plaintiff, which are

particularly noticed in the opinion. They insisted that the complaint should be dismissed, on the ground that the subject-matter of the litigation was exclusively of admiralty jurisdiction."

*S. L. Stebbins,* for the appellants, upon the point that the act of 1862 was unconstitutional and void, as encroaching on the jurisdiction of the federal courts, cited *In re Josephine* (39 New York, 19); 1 Conkling's Adm., 73 ; Burrill's Law Dict., " Material Men " ; *Harper* v. *The New Brig* (1 Gilpin, 536); Benedict's Adm., § 264; *De Loiro* v. *Boit* (2 Gall., 466, 467, 475) ; *The General Smith,* 4 Wheaton, 438, 443 ; *Ferran* v. *Hosford* (54 Barb., 200); *Wynehamer* v. *People* (3 Kern., 378, 487). Upon the point that the statute is unconstitutional, as contravening the right of trial by jury, and depriving persons of property without due process of law, he cited 35 N. Y., 302 ; 2 Seld., 358, 366 ; 4 Hill, 140 ; 14 Barb., 425 ; 3 Park. Cr., 544 ; 39 N. Y., 171 ; *Veltman* v. *Thompson* (3 Comst., 438); *The Belfast,* 7 Wall., 644 ; Const. of 1846, art. 1, §§ 2, 6 ; Const., of 1821, art. 7, §§ 2, 7 ; *Trust* v. *Pierson* (1 Hilton, 292, 295) ; *Ferran* v. *Hosford* (54 Barb., 200); *Caldwell* v. *Colgate* (7 Barb., 253). As to the application of Fox's payments to the plaintiff, he cited *Pattison* v. *Hull* (9 Cow., 747, 775) ; *Dows* v. *Morewood* (10 Barb., 183).

*F. L. Westbrook,* for the respondent, upon the point of validity of the statute, cited *Ferry Co.* v. *Beers* (20 How., U. S., 393) ; *McGuire* v. *The Goliah* (21 How., U. S., 248) ; *Foster* v. *Busteed* (100 Mass., 409) ; *The ship Francis Palmer,* MS. Opn. of Justice NELSON ; *The Belfast,* 7 Wall., 624 to 646 ; *Com.* v. *Hitchings* (5 Gray); *Comm.* v. *Clapp* (id. 100); *People* v. *Toynbee* (3 Kern., 441); *Fisher* v. *McGirr* (1 Gray, 21); *In re Joseph E. Caffe* (Olcott, 401, 404); *Hancox* v. *Dunning* (6 Hill, 494). That in this case there was no necessity of filing specifications under the statute, he cited *Delaney* v. *Brett* (4 Robt., 712) *Matter of Tilton,* 19

Abb., 50 ; *Franklin* v. *Pendleton* (3 Sand., 572) ; *Ring* v. *Gibbs* (26 Wend., 502). As to the payments and their application, he cited *Happy* v. *Mosher* (47 Barb., 501) ; *Andrews* v. *Durant* (11 N. Y., 35) ; *Dow* v. *Austin* (20 N. Y., 181) ; *Dow* v. *Austin* (25 Barb., 26) ; *Allen* v. *Culver* (3 Den., 284) ; *Marsh* v. *Bank* (34 Barb., 298).

FOLGER, J. In 1866 one Fox, at his shipyard in South Rondout, in Ulster county, built the hull of a vessel, for Steele and others, the appellants. Sheppard, the plaintiff did the blacksmith work on the vessel. For his claim for that work, he assumed that he had a lien on the vessel, by virtue of the statute of this State, entitled " An act to provide for the collection of demands against ships and vessels ;" passed April 24th, 1862. He took proceedings under that act, and by virtue of a warrant issued by the county judge of Ulster county, he seized the vessel. The appellant gave a bond, under the act, for the discharge of the vessel. In the action brought by Sheppard on that bond against the appellants, they raised the question that the act of 1862, is in conflict with the federal Constitution, and on that question with others, the case is brought here. The appellants rely upon the decision of this court, *In the matter of the Steamboat Josephine* (39 N. Y., 19). It was there held, that so far as relates to a *maritime* contract, the Constitution of the United States, declaring that the judicial power of the United States, shall extend to all cases of admiralty and maritime jurisdiction ; and the judiciary act of congress approved 24th September, 1789, conferring upon the federal courts exclusive jurisdiction in all admiralty and maritime causes ; render unconstitutional and void this act of the legislature.

That was the case of a domestic vessel, which was enrolled at the custom house in New York city, and her home port was there. She was engaged in traffic between that port and Monmouth county, New Jersey. The claim against her was for supplies furnished her at the home port. It was sought to be enforced *in rem*, in the courts of this State. It

was decided in that case, that the claim was on a *maritime* contract, that there was no lien for the claim under the *maritime* law, which could be enforced *in rem*, in a court of admiralty; that where a statute gives such a lien, courts of admiralty will not enforce it; but that the courts of admiralty had jurisdiction in a suit *in personam* to enforce payment of this claim for supplies; that having such jurisdiction it was exclusive, except such concurrent remedy as is given by the common law; and that the proceedings taken in the case, in the courts of this State, could not be enforced. And the statute above referred to, was pronounced in conflict with the Constitution of the United States, and its judiciary act. That decision is placed upon the facts appearing in that case. It holds that in such a case as they show, the act of 1862, can give no right to the State courts to act, inasmuch, as so far, it is inoperative. But those facts make a case quite different from that before us. The claim there, was for supplies furnished to a vessel, engaged in the prosecution of the business for which she was built and owned. It was a maritime contract, and fell within the exclusive jurisdiction of the admiralty courts. The claim here, is for labor upon the hull of a vessel, while in the process of construction, before launching, while yet on the land. This is not a maritime contract. It is one relating to a subject on the land, and it is to be performed on the land. The admiralty courts have no jurisdiction for its enforcement. (*Foster* v. *The Richard Busteed*, 100 Mass., 409; *Ferry Company* v. *Beers*, 20 How. U. S., 393.) And though the act of 1862 is held by the case in 39 N. Y., to be unconstitutional and void in relation to particular cases covered by its terms, it may yet be valid to all intents and purposes in its application to other cases within the scope of its provisions, but varying from the former in particular circumstances. And this though the variant provisions be contained in the same section, if they be distinct and separable, so that the one may stand though the other fall. If they are not essentially and inseparably connected in substance, some may be kept while others are rejected.

(*Golden* v. *Prince*, 3 Wash. C. Ct., 318; *Commonwealth* v. *Hitchings*, 5 Gray, 482.) There is no objection then, to upholding the act of 1862, in such of its provisions as give a lien upon vessels and furnish a means of enforcing it, in cases of contracts not maritime, and as to which there is no admiralty jurisdiction. The act can be sustained and applied to the case before us. It follows, then, that this position taken by the appellants is not tenable.

The second point made by the appellants is, that the act of the legislature above referred to, is unconstitutional and void, for that it is in contravention of the provision of the Constitution of this State, which secures to every person a trial by jury, in all cases in which it has been heretofore used (Const., art. 1, § 2), and that it deprives of property without due process of law. The legislature undoubtedly had a right to give to one doing work for another in such a case as this, a lien for the price of his labor upon the result of it. Such a right was exercised by the passage of a law in 1798 (1 R. L., p. 130), amended in 1817; (Law of 1817, p. 49). In 2 R. S., p. 493, there is such a law; and now this, of 1862. A lien existing in favor of Sheppard against the appellants, by virtue of the provisions of the act of 1862; in the absence of any statutory remedy, he would, of necessity, have resorted to a court of equity to enforce it. And in this, he would have done no more than to invoke a power, which was in existence before the adoption of any of our State constitutions. This power might be exercised without the aid of a jury, and there was no right in the parties to a jury trial. In such cases then, the trial by jury had not, in the words of the Constitution, "been heretofore used." So that the act of 1862 is not void, for the reason claimed by the appellant. (Story's Eq. Juris., § 506, 1216.) And inasmuch as the act of 1862 provides for the regular administration of its provisions by the courts of the State, it does enforce them by due process of law. (*Wynehamer* v. *The People*, 3 Kern., 378, 425, and cases there cited.)

The act of 1862 provides (§§ 2, 3), that the debt against the vessel shall cease to be a lien, whenever she shall leave the port at which the debt was contracted, unless the person having the lien shall, within twelve days after such departure, file specifications of the lien in the office of the clerk of the county in which the debt was contracted. This vessel was built at South Rondout. She was launched on the 8th of September and taken to Wilbur, before Sheppard applied for a warrant against her. Wilbur is a place about three quarters of a mile inland from South Rondout. The vessel was taken there for greater convenience in putting in a center board. Sheppard applied for his warrant on the 12th of September. Attached to his application were complete specifications of his claim. The application and the specifications attached to it, were that day filed in the office of the clerk of Ulster county. There was no other filing of the specifications. His application states as a fact, that the specifications were filed on that day and at that place. The appellants claim that Sheppard lost his lien on the vessel, because the filing of the specifications with the application, was not such a filing as the statute requires, and that the taking of the vessel to Wilbur, was a leaving of the port at which the debt was contracted, and that there was no legal filing of the specifications within twelve days thereafter. It is not needed that we determine these questions. By the provisions of the act of 1862, the owner of the vessel, may apply to the officer who issued the warrant for her seizure, for an order for her discharge, and the vessel shall be discharged upon the performance of certain prerequisites, among which is the giving of a bond. It appears from the papers in the case, that the defendants did give such bond on the 12th of September, the very day of the seizure, four days only after the vessel was taken to Wilbur, and eight days before the time had expired in which the plaintiff might file his specifications and thus preserve his lien. This action is brought upon that bond. By this bond and the action of the county judge, the defendants did, on the 12th of September, procure the release of their vessel and the

discharge of the plaintiff's lien. It would have been an idle thing for him to do, to file his specifications after that. Why file specifications to preserve a lien, which in a legal manner had been removed by the act of the defendants? They had discharged his lien; no act of his could replace it. Thenceforward the remedy of the plaintiff was on the bond. The necessity of filing imposed by the statute was removed, so that even if we should hold, that the removal of the vessel to Wilbur was a leaving of her port within the intent of the statute, and if we should hold, that there was no legal filing of the specifications, we should not hold that the plaintiff had lost his remedy on the bond. For his claim and his lien did subsist at the time of his exhibiting his claim. The appellants gave their bond to pay the claims if established. By the giving of the bond, the lien on the vessel was discharged, but the claim was not satisfied. The filing of the specifications could not restore the lien. And the omission to file, if there was an omission, did not deprive the plaintiff of his right of action on the bond. Nor do we perceive that the facts sustain the other positions of the appellants, founded upon the omission to file specifications apart from the filing of the application.

The counsel for the appellants, also claims that the plaintiff was paid, or nearly paid for his work done on this vessel. And there was an exception to the ruling of the referee on the trial, rejecting evidence offered by the appellants, which it is claimed would have shown that he was paid. These two points depend upon the same state of facts. Fox, the builder, during the season of 1866, besides the building of this vessel, built other vessels, and repaired vessels, at the same yard. All this work was going on at the same time. For it all Sheppard did the blacksmithing. He kept a general account of it against Fox, specifying, however, for what vessel each item was done. Fox paid to Sheppard from time to time, in all as he testified, $530. It was paid on account generally. Fox told Sheppard it was from money which was paid on the contract for building this vessel. It

may be inferred that such was the fact. But this did not have the effect of paying Sheppard in particular for the work done by him for this vessel. When Fox received money on the contract for this vessel, it became his money; when he paid part of it to Sheppard, he gave no direction for its application on any particular part of the account against him. That account may be considered either as general, or made up of distinct causes. When a debtor makes a payment to a creditor upon a general account, with no direction given where it shall apply, the law applies it upon the oldest items of account. When a *debtor* makes a payment to a creditor on an account composed of distinct causes of account, and gives no direction, the creditor may apply it at the time, on which one of them he chooses. And if the creditor makes no specific application at the time, he may make such application at any time afterward as he chooses, if it is a matter of indifference to the debtor where it is applied. In this case it does not appear, but that the $530 as it was paid from time to time, was taken up by items of the account older than any of those for work done on this vessel; or if the account is treated as one of distinct causes, the fact still remains that no direction was given by Fox for the application of the money; and as all the account of Sheppard against him was an indebtedness of like nature, it was a matter of indifference to Fox where Sheppard applied it. Sheppard was right in applying it where he pleased, and he did not apply it on the work done for this vessel. The facts do not show a payment to Sheppard for this work.

On the trial the appellants offered to prove: "that the defendant, Steele, paid to the witness, Fox, money for the purpose of paying this bill, and that the money so received by witness was paid by him to the plaintiff for the purpose of paying this bill of blacksmith work on the vessel, and is the money paid by witness to the plaintiff." The referee refused to receive the proof, and the defendants excepted. The ruling was correct. The offer as made, was of evidence not material. It did not propose to show that Fox gave any

direction to Sheppard, or told him the purpose of the payment. Had the offer contained the additional fact that Fox told Sheppard the purpose for which he paid the money, and that it must be applied on the work done on this vessel, it would have been material. A purpose formed in the mind of Steele and Fox, not communicated to Sheppard, could not affect his action. The absence of such communication left Sheppard to apply the money as he saw fit. (*Pattison* v. *Hull*, 9 Cow., 747; *Dows* v. *Morewood*, 10 Barb., 183.)

The judgment appealed from must be affirmed with costs to the respondent.

All concurring except PECKHAM. J, who did not sit, having been a member of the General Term below, judgment affirmed.