NELSON EDWARDS ET AL. v. GEORGE W. ELLIOTT.

1. In an executory contract to build a vessel to be paid for in instalments, as the work progresses, the title remains in the builder until the work is completed and delivered.

2. Where by the terms of the contract, when an instalment was paid, the vessel, so far as then constructed, was to become the property of the purchaser—*Held*, that the burden is on him to show the time of payment, and that his title vested before the lien attached.

3. The act for the collection of demands against ships, steamboats, and other vessels, (*Nix. Dig.* 576,) does not conflict with the constitution of New Jersey, by violating the right of trial by jury.

In error to the Supreme Court.

For former proceedings in this case, see 6 *Vroom* 265.

An article of agreement was made November 3d, 1866, between Henry C. Jeroleman of the first part, and Nelson Edwards and others of the second part, for building a schooner of specified dimensions, materials, and finish, for the consideration of $54 per ton; the builder to furnish all labor and materials and deliver the vessel in May, 1867. The payments were to be made as follows: $2500 when the keel was laid; $3000 when the frame was all up; $3500 when ceiled, deck beams in, kneed off and decks laid; $3500 when outside planks were on and squared off; $3500 when the poop deck was on; $2000 when ready for launching, and the balance when delivered according to contract. And it was agreed that as the said several instalments were paid, and upon the payment of each instalment, the schooner, so far as then constructed, and the materials therein inserted, should be and become the property of said Edwards and others.

The schooner was built at East Newark, Hudson county, N. J., in the winter and spring of 1872. Charles Elliott, and David Ripley and others, defendants in error, furnished timber for the vessel, and June 19th, 1867, caused the same

to be seized by the sheriff, under " an act for the collection of demands against ships, steamboats and other vessels, approved March 20th, 1857, and supplement." *Nix. Dig.* 576–81.

At the time of the seizure, the schooner was unfinished upon the stocks, and had not been launched, nor named, enrolled or licensed.

July 2d, 1867, the defendants below, Edwards, Woolsey, and Collins, gave bond to Elliott, Ripley and others, lien claimants, for $4894.32, under section 12 of the above act, and the vessel was discharged from seizure.

Elliott's Bill was $201.70, for chestnut timber furnished in November, 1866. Ripley's bill was $2245.46, for oak, pine, &c., furnished between January 15th and May 10th, 1867.

An action was brought in the Supreme Court on the bond. The defendants demurred. The demurrer was overruled. The defendants afterwards filed special pleas. A special verdict was rendered, and judgment thereon entered in the Supreme Court. A writ of error on said judgment was issued, and returned to this court.

For plaintiffs in error, *D. McMahon*, of New York.

For defendant in error, *A. Q. Keasbey*.

The opinion of the court was delivered by

SCUDDER, J. Upon the special verdict rendered in this cause, the Supreme Court has adjudged, as appears by the record returned, that the act entitled, "An act for the collection of demands against ships, steamboats, and other vessels," approved March 30th, 1857, is valid and constitutional, and that Nathaniel Ellis and Henry Jeroleman, the builders of said vessel, were the owners thereof, and competent to charge it with liens, and that the respective claims of the plaintiffs were subsisting liens under the laws of the State of New Jersey, on the said vessel at the time of exhibiting the same, and that the accounts claimed by the plaintiffs were due

in this suit. Errors are assigned upon the several points of the judgment.

I will consider first the construction of the statute in its application to the facts in this case as they appear on the record, assuming its validity; and next the validity or constitutionality of the act, so far as it affects this action.

The suit is upon the bond given by the defendants to the plaintiffs below, to discharge the vessel from the seizure of the sheriff. This bond is compulsory, *in invitum* put upon them by the statute before they can take their property from the custody of the law. They should not therefore be shut out from any defence which they have to the merits, and which they have pleaded and presented to the court with proper diligence, and without waiver.

The condition of the bond is, that the obligors shall pay the amount of all such claims and demands as shall have been exhibited to said commissioner, which shall be established to be subsisting liens upon said vessel, pursuant to the provisions of said act, at the time of exhibiting the same respectively. There can be no subsisting lien, if the provisions of the act have not been met, or if the act itself is a nullity. These particulars must be established by the plaintiffs, when challenged and denied in proper legal form by the defendants, and this defence is open to them by the very terms of the condition of the bond.

1. Are these claims subsisting liens under the statute, assuming its validity?

It is insisted in opposition, that the two several debts in the declaration mentioned were not contracted by any master, owner, agent, or consignee of said schooner. The timber was bought for the vessel by Jeroleman, who was the contractor and builder. It is said he was only the builder, not the master, owner, agent or consignee.

The vessel, when seized by the sheriff, was on the stocks, in the possession of Jeroleman, to be built and finished under his contract with Edwards and others, above stated. The work was all done, and the materials furnished by him. It

was not completed, not delivered, and the title remained in the builder, unless there is some special condition in the contract which alters the general principle of law.  See the cases cited in the opinion delivered in the Supreme Court, especially *West Jersey R. R. Co.* v. *Trenton Car Works*, 3 *Vroom* 517, decided in this court June Term, 1866, holding, that in the case of an executory contract for the sale of an article not in existence, but to be manufactured, even when the contract price is paid in advance, no title passes until the thing is completely finished, and is either delivered to the orderer or is appropriated to his benefit, or set apart for him, or is accepted by him.

It is claimed that there has been a delivery, appropriation and acceptance under the terms of the contract.  The only part of the contract that can have this effect is the express provision, that from time to time, as the several instalments were paid by the parties for whom the vessel was built, and upon the payment of each instalment, the said schooner, so far as then constructed, and the materials therein inserted, shall be and become the property of the said parties of the second part.

This is an agreement, that on payment of the first instalment, and of each succeeding instalment, the general property, in so much of the vessel as is then constructed, shall vest in the purchasers.  It is not necessary, therefore, to do more than again refer to the authorities cited in the opinion of the Supreme Court, upon the effect of a stipulation in an executory contract to pay certain instalments as the work progresses.  A summary and. review of all the important cases upon this point will be found in the brief of counsel, and in the opinion of Justice Denio, in *Andrews* v. *Durant*, 1 *Kern.* 35.  This last case denies the authority of *Woods* v. *Russell*, 5 *Barn. & Ald.* 942, and *Clarke* v. *Spence*, 4 *Ad. & El.* 448, which have often been doubted, explained and modified, and returns to the principles held in the earlier English cases, and in *Laidler* v. *Burlinson*, 2 *Mees. & Wel.* 602, that the general rule is, that under the contract for

the building of a vessel or other thing, no property vests in the person for whom it is agreed to be built, until it is so finished and delivered. This case also holds that the rule is the same where certain portions of the contract price are agreed to be paid, and are paid by the builder at specified stages of the work; and when an agent of the person for whom the article is to be constructed is appointed, and actu- ally does superintend and approve the materials and work. Thus covering the points wherein Woods v. Russell and Clark v. Spence are distinguished from the general rule.

In the present case, our Supreme Court has decided that an executory contract to build a vessel, to be paid for in instalments as the work progresses, the title remains in the builder until the work is completed and delivered. The rule is accurately expressed, and is supported by the weight of authority.

But in this contract we have something different; the express stipulation that the property shall pass as the several instalments are paid, and it is contended that upon the payment of an instalment, the builder ceased to be the owner, and the person who furnished materials to the builder could have no lien.

The true construction of such contract, and its effect in depriving a party of a lien, can be determined when the question arises. Here, there is no proof that any instalment was paid before all the materials were furnished and the vessel seized by the sheriff.

The only finding of the jury in their special verdict upon this point is, " that the original contract price for constructing said vessel would have been about $21,000, but said Jeroleman was paid in excess of said price about $1500. There is no time given and no fact stated upon which an appropriation of payment could be founded. The builder was therefore, in law, still the owner of the vessel, and the debts contracted by him became liens on the vessel, under the statute.

The burden of proof was on the defendants to show their payments and the change of title, if there were any.

The next point of exception is, that this act was not in-

tended to apply to vessels on stocks, newly and primarily built. The different particulars in the statute under sections 1st, 3d and 8th, are cited to show that an existing vessel having a name, a commander, tackle, &c., is contemplated, but the first section which gives the remedy, is more general, and by separating its terms, we have a lien given for a debt contracted by the owner for work done, or materials or articles furnished in this state for or towards the building a ship or vessel. The suggestion of counsel that this means rebuilding, is a substitution of one thing for another without authority, a shaping of the statute to fit the argument. There is no sufficient reason to suppose that the act excludes a lien for building a new vessel. It includes this, and also, the repairing, fitting, furnishing or equipping an existing vessel. The words and terms may be used disjunctively.

These are the points of objection to the statute, assuming it to be valid, but denying its application to this case. But it is further insisted—

1. That this lien act contravenes the constitution and laws of the United States, conferring admiralty jurisdiction in the federal courts. *Art. 3d, Sec. 2d, Judiciary Acts,* 1789, 1854.

2. That it violates the right of trial by jury given by the constitution of New Jersey.

The first of these constitutional objections was disposed of on the demurrer to the declaration. The court overruled the demurrer and held that the contract for building a ship within the state is not a maritime contract, but a contract for building entirely under state control, which may be enforced by a common law remedy, or by any new remedy which the legislature may provide.

To avoid any misapprehensions, it is however stated that so far as the law is designed to aid in the enforcement of a maritime contract for which admiralty may proceed *in rem,* it is clearly in conflict with the constitution and laws of the United States.

Whether this last ruling conflicts with *Randall* v. *Roche,* 1 *Vroom* 220, it is not necessary now to consider; but it is

sustained by the cases in the United States Supreme Court, cited in the opinion delivered in the court below, and in the recent cases. *In re Josephine* 39 *N. Y.* (12 *Tiff.*) 19 ; *Jackson* v. *Steam Propeller Kinne, United States District Court of New Jersey, Am. Law Reg., Vol.* 8, 470 ; *Vose* v. *Cockcroft,* 44 *N. Y.* 415 ; *Sheppard* v. *Steele,* 43 *N. Y.* 52.

The judgment upon the demurrer is not before us on this writ of error, which brings up only the judgment of the Supreme Court upon the special verdict. But as this later judgment also determines, in general terms, that this act is valid and constitutional, it may be proper to repeat the qualification made in the Supreme Court, in deciding the demurrer, that it is constitutional in its application to this particular case of building within the state.

The next point urged, that this lien act prescribes a remedy which makes no provision for a trial by jury, was pressed with much earnestness by counsel, mainly on the authority of *Parsons* v. *Russell,* 11 *Mich.* 113 ; *Greene* v. *Briggs,* 1 *Curtis C. C. R.* 311, and *Wynehamer* v. *People,* 3 *Kern.* 378. The last two cases arose under acts for the prevention of intemperance, which were summary in their proceedings, confiscating liquors, fining and imprisoning by *quasi* criminal processes, and were new and anomalous in many of their features. It is sufficient to say, that they are not applicable to the present case, for reasons that will hereafter appear in considering our law with reference to other existing statutes. The case of Parsons *v.* Russell, is under a statute similar to ours, and appears to be directly in point, but it was decided by a divided court, with little notice of other statutes, *in pari materia,* if any there be in that state, and it is without conclusive authority or precedent.

The counsel have not found another case of like purport.

On the other hand, *Sheppard* v. *Steele,* 43 *N. Y.* 52, decides that their lien law of 1862, entitled "An act to provide for the collection of demands against ships and vessels," which is similar to ours, is not unconstitutional as infringing the right of trial by jury. The reason assigned is that liens were

given in such cases before the constitution of 1846, which were enforceable in equity, without a jury; and that they were not, therefore, cases where, within their constitution, (*Art. I*, § 2,) a trial by jury had theretofore been used. But this is not all. A fuller consideration of the opinion of the court is instructive in determining the present case. Its statements condensed and generalized, that the legislature could give a lien of this kind, and in the absence of any statutory remedy provided, equity would enforce it without a jury, by process older than our constitution, distinguishes this remedy from the ordinary issues in civil causes before a jury. It gives to us intimations of remedies in particular cases, which have come to us from the civil law, and which have been used for centuries without a complaint that they infringe on the common law right of trial by jury. Such are all the proceedings in courts of equity and other courts adopting its forms. So in admiralty courts, in the enforcement of maritime liens. So in special cases by statutes in analogy with these extraordinary remedies, we have a new and peculiar jurisdiction conferred. 1 *Pars. Mar. Law* 489; *Story's Eq. Jur.* 506, 1216.

Our colonial constitution of July 2d, 1776, § 22, ordained that " the inestimable right of trial by jury shall remain confirmed, as a part of the law of this colony, without repeal, forever."

Yet, in 1798, an attachment law against absconding and absent debtors was passed, which has the very features which are most obnoxious to the charges made against this law, and it still stands upon our statute book, enforced daily in our courts without a question as to its constitutionality.

The goods of a defendant, upon affidavit of indebtedness, &c., are seized, notice is advertised; if he fail to appear, his property is sold by auditors and distributed among the applying creditors. The defendant may thus be deprived of his property without a trial by jury. Who doubts the legality of this proceeding? If the defendant appear, the statute regulates the method and the manner of discharging his per-

sonal property from the lien of the attachment. He was required by the older statute to enter into special bail; by later statute to give bond with one or more sufficient sureties, approved by the court, in double the amount of the personal property attached, conditioned for the return of the goods, if judgment be entered for the plaintiff. By this his goods are relieved, and he may plead and have his trial by jury. This is substantially the form of remedy given to enforce the lien against vessels under the statute in controversy.

Our present constitution of 1844 agrees substantially with the old constitution in securing the right of trial by jury. Article I, § 7, ordains that the right of trial by jury shall remain inviolate. It is now said that the recent law of 1857 violates this right, because it requires a person to give a bond, which, from poverty and being unknown, he may be unable to do, before he can have a trial by jury.

The requirement to give a bond is for the discharge of his property from the lien and custody of the law, and then he has his trial by jury upon the issue, whether he is a debtor or not. He must exercise his right under such reasonable regulations as the legislature may establish for the security of creditors, and there is no violation of the right.

When goods were taken in distress for arrears of rent, although they were formerly only detained as pledges for enforcing the payment of such rent, a more effective remedy was provided by an act of 1795. After holding the goods for ten days, with notice of the taking, if they were not replevied they were sold and the proceeds applied to the payment of the rent. A bond must be given in replevin before the goods are discharged, and before the right to sell them can be tried by a jury, under this statute.

In 1855, a supplement to our practice act was passed, requiring the defendant in every action at law to file with his plea an affidavit that the same is not intended for the purpose of delay, and that he verily believes he has a just and legal defence to said action on the merits of the case. No such requirement existed before the constitution of 1844.

If this affidavit is not filed the defendant's plea is a nullity, judgment by default is entered, an assessment of damages is made by the court, or by a judge or clerk of the court in vacation, and his property is sold under execution. These bonds and affidavits are regulations of the practice of the courts, which preceded the trial, and are in no legal sense a violation of the right. This right of trial by jury in civil causes, as commonly understood and as construed in our courts, is the right to have all such causes heard before a jury of twelve men, according to the usual process and practice of the courts of common law. It is intended to prevent the arbitrary seizure and disposition of person or property, and the determination of rights affecting them, without the regular and orderly proceedings of courts of law. If a person is arrested, he gives bond and the right of action is tried. If his property is seized, he regains it by giving security for its return if the right is determined against him. In each case, his right to a jury trial remains.

This act of 1857, giving a lien on vessels, introduces no new or arbitrary remedy, but uses such as is well known and used in our law in similar cases, and the right of trial by jury under its proceedings remains inviolate. This conclusion appears to be clearly within the construction which has been given to the sections of the constitution of the United States, and the constitutions of other states, and many statutes of like import. See *Sedg. Stat. and Const. Law* 548; 1 *Bish. Cr. Proc.* 893, *and notes;* 2 *Story Const.* 1768; 1 *Kent Com.* (*9th Ed.*) 618; *Bonaparte* v. *C. & A. R. R. Co., Bald. R.* 205; *McGear* v. *Woodruff,* 4 *Vroom* 213.

The judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, BEDLE, SCUDDER, CLEMENT, DODD, LATHROP, OGDEN, WALES.    8.

*For reversal*—None.