By the Court.—Sedgwick, J.
The general rule is that if an agent in the course of his agency sign a bill in his own name, he is liable on it, and the principal is not liable (Rogers v. Coit, 6 Hill, 322; Crocker v. Colwell, 46 N. Y. 212). It is not inconsistent with this rule, that where a partnership does business in the name of one of the partners, and in the course of the business, that partner signs a note in his own name, all the partners are liable on the note (Bank of Rochester v. Monteith, 1 Den. 405).
I understand that section 2, p. 768, 1 B. S.,—i. e., “every note signed by the agent of any person under a general or special authority shall bind such person,” —means a note that on its face shows it is signed by an agent, and does not mean a note whereon the agent is personally liable.
The opinion in Engh v. Greenebaum (2 Hun, 136), must be read vrith reference to the facts of the case. The opinion holds the defendant liable as a principal *21 upon a bill signed by the agent personally, and says that a violation of private instructions given to an agent will not absolve a principal from responsibility, provided the act of the agent is within the authority. The facts in proof showed that the business done by the agent was Greenebaum’s business, and the latter meant it should be done in the agent’s name. When the agent received the consideration of the bill, by construction of law Greenebaum received it, and therefore Greenebaum was liable to refund that consideration (Allen v. Coit, 6 Hill, 318), although technically he might not be liable on the bill.
I am of opinion that in the present case, the testimony proved that the business done by Creagh was his own business, and was not the defendant’s. Creagh, in drawing the bills, did not act as defendant’s agent. All the liability that the defendants incurred from their dealings with Creagh, depended upon a special contract between them, which was, in substance, that upon the defendants receiving funds to correspond in amount with the bills to be protected, they would protect the bills. The defendants would not be liable on the consideration of a bill, simply because it had been paid to Creagh.
■ On the argument it was not denied that if the defendants received from Creagh, money to be transmitted to Liverpool, for the use of the holder of the bill, that is, to put the drawee in funds to pay the bill, the holder has an action if the defendants did not transmit the money.
The testimony must be examined to see if Creagh did pay to the defendants, money to be used for the protection of the bill brought by the plaintiff. The claim is that Creagh sent to the defendants a certain sum of $5,000, to be applied to protect the plaintiff’s bill with others. Wo special instructions were sent with the $5,000, but it is claimed that the defendants *22 received that sum. contemporaneously with the advice sheet, that had opposite the statement of plaintiff’s bill, the words, “Please advise by first mail,” and that this is tantamount to a direction to apply the money to that draft.
The defendant’s claim that before the advice-sheet was received, they had required Creagh to reduce his indebtedness, to them to $500, and to keep it so reduced, and that the $5,000 was sent in answer to this requirement.
There is no doubt that Creagh would not have had the means of drawing the $5,000, if the money paid by plaintiff had not been deposited in Creagh’s bank. But immediately upon Creagh’s receiving the money from plaintiff, it became Creagh’s money. Creagh could use it as his own and give to it any direction that any owner could. His duty to the plaintiff was clear, but his power of disposition was absolute (Sheppard v. Steele, 43 N. Y. 60). The fact, that Creagh had received the plaintiff’s money has still less force, when it appears that the defendants did not know what the fact was. Creagh’s excuse for not remitting regularly was that his agents had not sent him the money for the bills they had sold. For all the defendants knew, the plaintiff’s bill might have been one of these.
Unless Creagh, in remitting the money to the defendants, limited its application, they had the right to apply it to the former indebtedness, as in fact they did. And the plaintiff, to entitle himself to judgment, was to show by a preponderance of testimony that under the general contract between Creagh and the defendants, the payment of the $5,000 was the performance of the condition on Creagh’s part, which made the contract operate specially in favor of the plaintiff as the holder of the bill; that is, that it was paid by Creagh to protect, among other bills, the one *23 bought by plaintiff. It was not enough that it was Creagh’s duty to limit the use, or that Creagh had an intention, not disclosed to defendants, to limit it; or even that defendants knew that Creagh had received and deposited the money paid by the plaintiff (Sheppard v. Steele, supra). If he did not communicate such an intention, or if the circumstances themselves did not show that such was his intention, the defendants’ right to apply the money where they saw fit prevailed (Manning v. Westerne, 2 Vern. 603; Stone v. Seymour, 15 Wend. 19).
On August 20, the plaintiff bought the bill and paid $2,900. All the business was done, and the money deposited on that day by a clerk of Creagh. Another clerk made up and mailed the advice-sheet after 2 o’clock of that day, and of course then wrote, against plaintiff’s bill: “Please advise by first mail.” The next morning the first-mentioned clerk drew from the bank where he had deposited the money paid by plaintiff $5,000, leaving a balance of about $300. The check on which he drew the $5,000, was one of a number signed in blank and left with him by Creagh. He placed the $5,000 in the Suffolk Bank in Boston, to the credit of the Herman-American Bank in New York, for account of the defendants, and sent information of this to defendants by telegraph.
Before the information and the advice-sheet reached defendants on the 21st, Creagh was indebted to them between $4,000 and $5,000 ; nevertheless, as the advice-sheet had requested that plaintiff’s draft be advised at once by mail, and at the same time saying the check would be sent on the 21st, there would, on these facts, only be room for an argument that the deposit of $5,000 was meant to be that check.
Such a conclusion would, however, disregard two controlling facts not yet mentioned. The first is, that on August 17, the defendants had written a letter re *24 quiring Creagh to reduce his indebtedness to them to $500, and there is no proof that any communication in •response had come from Creagh, before the 21st. The next is, that whatever had been the clerk's intention on the 20th, in writing on the advice-sheet “ check tomorrow,” the fact was his deposit of $5,000 on the 21st was not made in pursuance of that intention. The proof was clear from himself, that he made it in obedience to a letter that had been written by Creagh on the 20th, at his place, a few miles from Boston. The clerk at one time said that this letter was written by Creagh after he had left his office on the 20th. This was immediately corrected by the witness saying that he did not know that Creagh was at his office at all on the 20th. Indeed, so far as the proof went, there was nothing to show (but the contrary was to be inferred) that Creagh had any knowledge at all of the plaintiff’s purchase or payment. It is, therefore, impossible to find it to be the fact, that the advice-sheet written by the clerk was meant by him or by Creagh, to refer to the deposit. The defendants were justified in considering, in accordance with the fact, that the deposit was made in response to their demand for a reduction of the first indebtedness.
On this last point, there was evidence that the defendants believed that the deposit was made in response to a demand of them, made by telegraph on the 21st; but the inferences to be drawn from the letter in which this appears are not unfavorable to the defendants. That letter was written, as its contents show, after the defendants had received the advice-sheet and information of the deposit. This letter said:
“We telegraphed you to-day, approximate balance of $9,000” (which included the amount of the advice-sheet) “must be paid to Suffolk National Bank, for account of German-American Bank, immediately after the receipt of this telegram ; and we are informed that *25 you have deposited with the Suffolk Bank $5,000 to our credit. This amount is totally insufficient to cover your indebtedness, and we have to request that you will at once pay to the Suffolk Bank, for our credit in the German-American Bank, $4,000.”
If the conclusions from the testimony given on behalf of plaintiff, be not correct this letter would show that the deposit was made, not as accompanying the advice-sheet, but to meet a demand on general account made by the defendants.
If the deposit of $5,000 had been large enough to pay off the indebtedness that existed, irrespective of the advice-sheet, and to leave some funds to be applied to the drafts specified in the sheet, large enough to protect plaintiff’s bill, it might be a question whether it was not defendant’s duty to make that application of the balance. The plaintiff should have proved what was necessary to such a case. The defendants proved that after applying to the general indebtedness the $5,000 there was not enough to protect plaintiff’s bill. It would seem that, with the balance and some funds afterwards remitted by Creagh, the defendants protected other bills to a greater amount-than £579. But the case was made to turn solely upon the way in which the $5,000 was to be applied by defendants.
After the defendants had applied the $5,000 to the general account, Creagh claimed that the remittance of $5,000 was sent by him to be used for plaintiff’s bill; but this claim did not alter the former facts which, at the time, fixed defendants’ rights.
Iam, therefore, of opinion that the judgment should be reversed, on the ground that it was not shown that the $5,000 was remitted for the benefit of the plaintiff.
Judgment reversed, with costs to appellant to abide event, and new trial ordered.
Fbeediiait, J., concurred.