DAIRYMEN'S LEAGUE CO-OPERATIVE ASSOCIATION, INC., Respondent, *v.* HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellant.

Fourth Department, November 23, 1937.

*Murray D. Welch,* for the appellant.

*Seward A. Miller,* for the respondent.

Judgment affirmed, with costs, on the opinion of ZOLLER, J., at the Trial Term.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and TAYLOR, JJ.

The following is the opinion of ZOLLER, J., rendered at Trial Term:

ZOLLER, J. Counsel for the parties hereto waived a trial by jury because it was their belief that the only issues involved here were questions of law, and not questions of fact. Accordingly, the action was tried by the court without a jury, and upon the trial it developed that there was a question of law to be determined, there being no dispute as to the facts. The defendant offered no testimony.

The facts, concerning which there appears to be no dispute, are substantially as follows: During the period from May 1, 1931, to August 31, 1931, plaintiff sold and delivered to one Harry C. Empie of Liberty, N. Y., various quantities of milk from the station or plant which plaintiff maintained at Liberty. The value of said

milk or milk products so sold and delivered to Empie by the plaintiff during that period of time amounted to $6,233.38. During that same period of time various payments on account were made by said Empie, amounting in all to $3,000. There had been business relations and transactions between plaintiff and said Empie prior to May 1, 1931, and such business relations and transactions continued not only during the period from May 1, 1931, to August 31, 1931, but also following the 31st day of August, 1931, and until some time in March, 1932, when the account was closed upon Mr. Empie's death. During the period of time from September 1, 1931, to the closing of the account, the value of the milk sold and delivered by plaintiff to Empie was $10,574.81. Lawrence E. Judd, as a witness for the plaintiff, testified that the value of the milk sold to Empie during this period was $10,577.51. Evidently he included in that total two small items of $1.35 each, being protest fees charged to the account. These two items, of course, did not, strictly speaking, represent any milk sold and delivered to Empie. In any event, they may be disregarded, as will appear later on in this memorandum.

Empie made, during the period from September 1, 1931, to the closing of the account, various payments aggregating the sum of $7,501.79. None of his payments during the whole time in question was for any specific amount of milk charged to his account, with one exception. His payments were in round figures, such as $100, $150, $200, and so on, up to one payment of $400. The one exception was a payment on February 2, 1932, in the amount of $349.50, in payment of a charge in that amount on January 21, 1932.

The foregoing figures show that on September 1, 1931, Empie owed the plaintiff a balance of $3,233.38. They also show that for the milk actually sold and delivered by plaintiff to Empie during the period from September 1, 1931, to the time the account was closed, less payments actually made by him during that period, there was a balance due plaintiff from Empie of $3,073.02.

Plaintiff has brought this action against this defendant because of two bonds, duly executed by the defendant, and each in the sum of $3,000, duly delivered to said Harry C. Empie, the principal therein, for good and valuable consideration paid to defendant by said Empie, and thereafter delivered by said Empie to the plaintiff herein. There is no question as to the execution, delivery or validity of these two bonds. Defendant does not seek to avoid liability under either bond by reason of irregularity or illegality with respect thereto. In fact, defendant is willing to assume full

liability under the second bond issued and pay to plaintiff the amount of $3,000, the amount specified therein. However, defendant does not believe that it should be called upon to assume liability under both bonds and pay plaintiff the sum of $6,000. Whether or not defendant should pay to plaintiff $6,000 or $3,000 is the sole question here for determination.

The first bond was executed by the defendant as surety and said Harry C. Empie as principal on April 30, 1931, and May 1, 1931, respectively, and the condition thereof was " such that if the said Principal shall pay or cause to be paid any and all sums of money that may become due and payable under such agreement and/or agreements, for milk and/or milk products delivered during the period beginning May 1st, 1931, and ending August 31st, 1931, and at such time or times as such sums of money shall become due and payable, and also shall pay such fair and reasonable counsel fees and other disbursements in addition to taxable costs as may have been incurred in or in connection with any suits, actions or proceedings brought or instituted under or on account of such agreements, then this instrument shall be null and void, otherwise to remain in full force and effect; provided, however, that this bond is issued subject to the following condition and provision: 1. That neglect or forbearance of Obligee in enforcing payments of sums secured by this bond or extension of time of payment thereof, or acceptance of notes or other security therefor, shall not in any way relieve the Surety from the obligation of this bond."

The second bond was executed by the defendant as surety and said Empie as principal on August 27, 1931, and the condition of that obligation was similar to the condition of the first bond, excepting that the period covered was for one year from September 1, 1931. In each bond, both Empie as principal and the defendant as surety were " held and firmly bound unto Dairymen's League Co-Operative Association, Inc. * * * (hereinafter called the Obligee) in the sum of Three Thousand and 00/100 ($3000.00) Dollars * * * to be paid to said Dairymen's League Co-Operative Association, Inc., its successors and assigns, for which payment well and truly to be made we do bind ourselves * * * jointly and severally, firmly by these presents."

In each bond there are also written these two clauses, which are the same except as to the dates:

" WHEREAS, the Principal desires to purchase from the Obligee, milk and/or milk products at such price and prices and in such quantities and upon such terms and conditions as may from time to time be agreed upon between the said Principal and the said Obligee; and

" WHEREAS, the Obligee requires the Principal as the condition of so selling milk and/or milk products to furnish a bond as security for the payment of all sums of money which may become due and payable, under such agreement and/or agreements, for milk and/or milk products delivered beginning on the 1st day of ———— and ending on the 31st day of ————, both inclusive."

In the first bond appear " May, 1931," and " August, 1931," and in the second bond appear " September, 1931," and " August, 1932."

It is defendant's position here that the various purchases made by Empie of the plaintiff between May 1, 1931, and some time in March, 1932, when the account was closed, constituted a single, continuous running account and, therefore, it is urged that there remains no liability under the first bond covering the period between May 1 and August 31, 1931, because all purchases made by Empie during that period were paid for in full.

There is no claim by defendant, and certainly there is no proof to support such a claim, that Empie, the debtor, gave any instructions to the plaintiff as to the manner in which his payments should be applied to his account, but defendant does claim that the payments made by Empie were applied by plaintiff as creditor at the time they were received, respectively, on account of the earliest items of Empie's indebtedness, and the court, upon all the proof, must presume such payments to have been applied in discharge of the earlier items of indebtedness, and that being the case, the plaintiff cannot now attempt to readjust or reapply such payments so as to restore or revive defendant's obligation under its first bond.

I think defendant is mistaken with reference to the facts as alleged by the plaintiff and as proven upon the trial, and it is my belief that the evidence supports the conclusion not only that there was no direction on Empie's part as to the application of his payments, but also that the plaintiff having in mind, possibly, the very situation which finally resulted, and having sole control of the application to be made of the payments, applied those received during the first period in question to reduce the indebtedness of Empie by reason of his purchases during that period and, likewise, applied those received during the second period in question for a similar reason and purpose, with respect to the indebtedness incurred by Empie during that period.

Beginning with May 1, 1931, Empie became a good customer of the plaintiff, and as time went on his purchases of milk and milk products were in substantial amounts. There is no doubt that in May, 1931, plaintiff had some notion as to the amount these purchases would likely be during the flush season from May first to September first of that year, and also had some information

regarding Empie's financial responsibility as well as his business ability. Therefore, to protect itself, evidently, plaintiff wanted a surety bond, and it was agreed that $3,000 would be a sufficient amount to provide such protection for and during that particular period. At the expiration of that period it appears that Empie owed plaintiff $3,233.38, to secure which payment, however, plaintiff had defendant's bond for $3,000. Thereupon it became necessary to negotiate regarding further security for the payment of future purchases to be made by Empie, and these negotiations resulted in the execution and delivery of the second bond.

It seems to me that there was a definite reason for having these two bonds issued, and the fact that two bonds were issued under such circumstances, I believe, shows that plaintiff's account with Empie was not to be considered or treated as a single, continuous running account. I think it must be apparent that if on September 1, 1931, Empie owed plaintiff more than $3,000, which amount had accrued during a period of only four months, plaintiff would have shown a lack of business sagacity in further dealing with Empie and in accepting another bond of only $3,000 for purchases of twelve months in expectation that during that period he would not only pay for milk actually received, but also pay the balance due on September first. I think it is reasonable to believe that if there had been any real basis for such an expectation, then plaintiff would have exacted on September 1, 1931, a much larger bond than $3,000.

Plaintiff was not obliged to designate immediately upon the receipt of each payment where it should be applied. It had a reasonable time in which to do this. (Sheppard v. Steele, 43 N. Y. 52, 60; Shipsey v. Bowery National Bank, 59 id. 485, 492.) Assuming that upon the proof here it appeared that neither the plaintiff nor Empie made any application of the various payments, and it became necessary under such circumstances for the court to make such application of the various payments as equity and justice required and according to its own notion " of the intrinsic equity and justice of the case " (Camp v. Smith, 136 N. Y. 187, 201), my decision would be that plaintiff was entitled to recover on both bonds.

Therefore, my conclusion is that plaintiff is entitled to judgment as demanded in its complaint. (Sheppard v. Steele, supra; Shipsey v. Bowery National Bank, supra; National Bank of Newburgh v. Bigler, 83 N. Y. 51; Bank of California v. Webb, 94 id. 467; Orleans County National Bank v. Moore, 112 id. 543; Camp v. Smith, supra; Civ. Prac. Act, § 160.)

Judgment accordingly.