New York County.—HON. D. C. CALVIN, Surrogate.—
October, 1879.

### RAPP v. MASTEN.

*In the matter of the accounting of* MYER MASTEN, *general guardian of* JOHN H. CONSTANTINE.

Where, upon the failure of a general guardian to pay to his ward the amount fixed by the Surrogate's decree, the surety of the guardian is

compelled to pay the same, such payment does not satisfy the decree, but the surety is subrogated to all the rights of the ward under the decree, and to the extent of the amount paid by him on account of such decree, he is entitled to issue execution against the person of the guardian, according to the practice of the former Court of Chancery.

APPLICATION by John R. Rapp for an execution against the person of Myer Masten, general guardian of John H. Constantine, for the sum of $875, in the nature of an attachment, in the form used by the old Court of Chancery in analogous cases. The contents of the petition are fully stated in the opinion.

STICKNEY & SHEPARD, *for petitioner.*

W. McDERMOT, *for guardian.*

THE SURROGATE.—The petition sets forth that the petitioner is administrator with the will annexed, of John H. Rapp, deceased. That in April, 1866, said Masten petitioned the Surrogate of this county to be appointed guardian of said infant, whereby the said John H. Rapp and one Coulter, as sureties for him, gave the usual guardian's bond in the penal sum of $3,000, whereupon Masten was duly appointed such guardian, and accepted the office, and entered upon its duties; that while acting as such, Masten converted to his own use the property of the infant, to the amount of $775.95, in violation of his trust and duty as such guardian. That he was required to render an account by the Surrogate of said county, and did so, to which objections were filed and the matter referred to an auditor, and that such proceedings were had, that the Surrogate of said county decreed, May 10, 1875, that said Masten had in his hands, of said estate, the sum aforesaid, over and above his commissions, and adjudged him to pay the same to

said Constantine; and to one Shaw, counsel to said Constantine, on the accounting, $200, allowed to him in lieu of costs.

That said Masten has not obeyed the decree, and no part of said sum has been paid, though demanded by said Constantine, who had become of age. That the transcript of said decree was filed in the clerk's office of the city and county of New York; thereafter, on the same day, execution was issued to the sheriff of said county, and thereafter returned wholly unsatisfied. That thereafter said Constantine commenced an action against petitioner as such administrator, &c., to recover the amount so ordered to be paid, and the petitioner was compelled to, and did, as such, pay said Constantine, March 19, 1877, $875, on said suretyship of the said John H. Rapp, for said Masten. That the petitioner thereby became subrogated to the rights and remedies of said Constantine against said Masten under said order, and that thereupon said Constantine, by assignment dated February 19, 1879, assigned to petitioner, as such administrator, all his claim against said Masten upon said bond, together with the decree, and with the judgment aforesaid, and all remedies thereunder, giving to petitioner power, in the name of said Constantine or otherwise, to proceed against Masten personally, or against his property. That on the 3d of April, 1879, petitioner served a certified copy of said order upon said Masten, with a notice annexed, and that he has wholly refused to obey said order, or pay the money adjudged to be paid.

Counsel for Masten, without answer to the petition, submits a brief raising substantially the question,

whether the payment by the surety to Constantine was not a satisfaction of the decree in question, so far as any remedy by way of execution of said decree could· be enforced, and as evidence of that result, he calls attention to the fact that the assignment of the decree was on February 19, 1879, while the payment was March 19, 1877. He also claims that as the decree was for $755.95, while the petition asks for an execution of $875, the amount claimed to have been paid by the surety ; and also that the right of subrogation did not carry with it the right to execute the judgment in question, in the· same manner that it might have been executed in behalf of Constantine, in whose name and for whose benefit the decree was made.

In Cuyler v. Ensworth (6 *Paige*, 32), it was held that where four joint sureties had been sued and judgment obtained against them, and three having paid the judgment, they could enforce the judgment by execution or creditors' bill against the fourth, to enforce his contribution towards such payment. And the learned Chan·cellor, at page 34, at the bottom, says : " In equity these complainants (the three sureties who paid), must be considered as the assignees of one-fourth of this judgment after the issuing and return of an execution unsatisfied,: and, as the suit in this court must be brought in the name of the person beneficially interested in the subject· matter of the litigation, as the legal or equitable assignees of the judgment, and not in the name of the nominal plaintiff, this creditors' bill is properly filed in their names. They are, therefore, entitled to all the rights in this court of complainants, in an ordinary

creditors' bill, after the return of an execution at law unsatisfied."

In Eno v. Crooke (10 *N. Y.*, 60), at page 65, at the bottom, Judge ALLEN, in discussing the effect of the payment by an indorser of a judgment against the maker, says: "The equitable doctrine of subrogation is favored, and the rights which grow out of it are recognized and protected, as well at law as in equity. The judgment in suit became, and was in legal effect the property of Smith (the indorser), and might have been enforced for his benefit, or a formal transfer to him might have been compelled."

In Hayes v. Ward (4 *Johns. Ch.*, 123), at page 129, the Chancellor says : " It is equally a settled principle in the English Chancery, that a surety will be entitled to every remedy which the creditor has against the principal debtor to enforce every security, and to stand in the place of the creditor, and have his securities transferred to him, and to avail himself of those securities against the debtor. This right of the surety stands not upon contract, but upon the same principle of natural justice upon which one surety is entitled to contribution from another." In Clason v. Morris (10 *Johns.*, 524), at page 535, the Chancellor recognizes the rule that a court of equity will give a surety the benefit of every lien or security against the principal, on his paying the debt of the principal. Numerous cases recognize the general doctrine, that on payment by a surety, he has a right to be put in the place of a creditor as against the principal debtor. If a judgment has been obtained against the principal, and the surety pay the judgment by virtue of his obligation as surety, he cannot be put in the place

of the creditor unless he has the means of enforcing the obligation against the principal debtor upon the particular judgment, as the plaintiff in the judgment might do. As I understand the authorities of Eno v. Crooke and Cuyler v. Ensworth (*supra*), no proceeding to enforce an assignment of the judgment to the surety is necessary. (See also, for the general doctrine, Cory v. Leonard, 56 *N. Y.*, 494 ; National Exchange Bank v. Silliman, 65 *Id.*, 475.)

In Hubbell v. Carpenter (5 *N. Y.*, 171), it was held, that a surety, by refusing to take the control of a judgment and execution against the principal debtor, when offered to him by the creditor, may deprive himself of the right to demand subrogation, when the debt is sought to be collected from him. See also Lewis v. Palmer (28 *N. Y.*, 271), where it is held that a surety who pays the debt is entitled to be put in the place of the creditor, and to all means which the creditor possesses to enforce payment against the principal debtor.

Under these authorities, I am of the opinion that the payment by the petitioner's testator as surety did not satisfy the judgment, but that, having paid as surety, the equitable doctrine of subrogation kept the decree alive ; that the surety might enforce the obligation against the judgment debtor, by executing the judgment or decree ; and that to the extent of the amount paid by him on account of that decree, on his liability as such surety, he is entitled to issue process in such case, according to the practice of the former Court of Chancery, which practice was for the clerk to issue execution under the seal of said court.

Ordered accordingly.