THE ORLEANS COUNTY NATIONAL BANK, APPELLANT,
*v.* CHARLES H. MOORE AND OTHERS, RESPONDENTS.

*Mortgage to secure the payment of several notes and drafts on which the mortgagor is liable — the mortgage must be held for the equal benefit of all the paper.*

On August 22, 1884, the defendant Church, being indebted to the plaintiff, a national bank, on commercial paper discounted by it, consisting of a note for $2,500 made by one Warner and indorsed by Church, a note for $5,000, made by Church and indorsed by the defendant Moore, and a draft for $7,500 drawn by Church and accepted by Moore, executed a mortgage for $15,000, payable one year from date as collateral security for the payment of all notes, bills, drafts, check or overdrafts, or indebtedness of every name or nature, due and owing to the said bank by said Church. Warner absconded and Church, who was at that time insolvent, made a general assignment and his assignee conveyed the mortgaged premises to Moore, subject to the mortgage. The premises were sold under a judgment, entered in an action brought by the bank to foreclose the mortgage, for the sum of $9,600. The foreclosure judgment, which was entered against Church and Moore by default, directed that the $2,500 note should be first paid out of the proceeds of the sale, although no demand that this should be done was made in the complaint.

Upon a motion made by Moore to strike from the judgment this provision a reference was ordered, and thereafter an order was made confirming the report of the referee, who found that Moore occupied the position of a surety, and that the net proceeds of the sale should be applied, *pro rata*, upon the several items of indebtedness held by the plaintiff and secured by the mortgage sale.

*Held*, that the order should be affirmed.

*Cory* v. *Leonard* (56 N. Y., 494) followed.

That the bank did not have the option of deciding in payment of which of the obligations it would apply the proceeds of the mortgage sale.

APPEAL from an order of the Orleans county Special Term confirming the report of a referee, directing the mode and manner of applying the moneys amounting to $9,600 derived on a sale of lands in an action brought for the foreclosure of a mortgage.

The mortgage in question was made and executed by the defendant Church and wife, to the plaintiff, on the 22d day of August, 1884. At that time the mortgagor Church was indebted to the plaintiff the Orleans County National Bank and the mortgage was executed to secure the payment of such indebtedness. This indebtedness consisted of several pieces of commercial paper which the bank had discounted in current business, viz., one note for $2,500, made by Albert S. Warner and indorsed by the said Church, dated July 3, 1884, and due September 4, 1884; also a

note of $5,000, made by the said Church and indorsed by the defendant Moore, dated July 21, 1884, and due August 3, 1884; also a draft drawn by the said Church and accepted by Moore for $7,500, dated August 9, 1884, and due August 23, 1884. The aggregate amount of such indebtedness was $15,000. On the day the mortgage bears date the officers of the bank requested Church to execute a mortgage to the bank as collateral security for all of the said indebtedness, and this purpose was expressed in the mortgage as follows: " This grant is intended as a security for the payment of $15,000, one year from date, that is to say as a collateral security for the payment of all notes, bills, drafts, checks or overdrafts or indebtedness of every name or nature due and owing to the said Orleans County National Bank, by said George B. Church, to the amount of $15,000. At the termination of the year from the date hereof, nevertheless, the security hereby mortgaged shall continue and remain in full force after the expiration of said year, until all and every indebtedness due and owing by the said George B. Church to the said bank is paid and liquidated." Church was at that time insolvent and Warner had absconded. Moore was solvent and in good credit. Before this action was commenced Church sold and assigned the mortgaged premises to a trustee in trust for the benefit of his creditors, who conveyed the premises to Moore, subject to the mortgage. Both Church and Moore were made parties defendant, but neither of them appeared and judgment was entered by default. In the complaint the plaintiff made no demand that the $2,500 note should be first paid out of the proceeds of the sale, but the judgment contained a provision to that effect, with a direction that the balance of the money derived from the sale should be deposited with the county treasurer, subject to the order of the court. After the sale and before any of the money was actually applied, Moore moved to strike from the judgment the provision directing the payment of the $2,500 note in full, which was granted by the court at Special Term, and the order also contained a provision referring it to a referee, " to hear, try and determine how the net proceeds of sale shall be applied by the plaintiff." The parties appeared before the referee and made their proof. The referee in his report fully sets forth the facts as found by him, bearing upon the question referred, and determined, as a matter

of law that the net proceeds should be applied *pro rata* upon the said several items of indebtedness held by the plaintiff and secured by the mortgage. It did not appear that, after the giving of the mortgage, Church became indebted to the bank in any further sum, but it did appear from the evidence that the notes remained unchanged after the execution of the mortgage. The report was confirmed in all respects at Special Term and from that order the plaintiff has appealed.

*Sawyer & Bullard*, for the appellant.

*John H. White*, for the respondent, Moore.

BARKER, P. J.:

The correctness of the basis of distribution of the moneys derived from the sale of the mortgaged premises, depends upon a question of fact in dispute between the parties, litigated before and determined by the referee. The bank contends that the money loaned by it upon the paper, to which Moore is a party, was borrowed by him and he should be treated as the principal debtor and not as a mere surety for Church. Moore disputes this contention and claims that he occupies the position of surety as to those items of indebtedness, and became a party to the paper at the request of and for the accommodation of Church, and the National Bank was informed of his true relation to the transaction when the money was loaned and the original note and draft were received by the bank, of which those now in question are renewals. The referee has determined both of these questions in Moore's favor.

On the original note and draft, as they were discounted by the bank, Church and Moore occupied the same position as maker and indorser, drawer and acceptor, as they do on the renewal paper now held by the bank. As these questions of fact are controlling of the case and support the order of distribution, if the report and order are allowed to stand, we have examined all the evidence with careful attention and find no reason for interfering with the referee's conclusions. If Moore's version of the dealings between him and Church in the stock speculation, in which the money loaned by the bank was used, be received as truthful, then the report of the referee deciding the disputed questions of fact is fully vindicated. Moore

stated, as a witness in his own behalf, that it was arranged between him and Church that he should aid Church in raising money, to assist him in buying and selling stocks, and that if any profits were realized in the transactions he was to have one-half of the same as a compensation for the loan of his credit, but that he was not to incur any hazard or risk, or suffer loss in any event. This statement is not denied by Church, but he, in his evidence, expressly admits that he was to indemnify Moore against all loss which he might incur in those transactions, and on the hearing Moore presented a writing, signed by Church, in which he made a promise to that effect. The letter written by Church to Moore at the time the $5,000 note was made and discounted, is also in confirmation of Moore's evidence. All through the evidence circumstances are disclosed which indicate very clearly that the officers of the bank were informed, at the time the discounts were made, of the relation which Moore held on this paper as between himself and Church.

As to the $2,500 note made by Warner and indorsed by Church, it appears that the bank discounted in the first instance a $5,000 note made by Church and indorsed by Warner for his accommodation, and the same was in that form several times renewed. Subsequently and by an arrangement made between Church and Warner, the latter, for a good consideration paid to him by Church, assumed the indebtedness and paid the note in part, and a note was then made by Warner, as maker, for the sum of $2,500, and indorsed by Church, and the note now held by the bank was given in renewal of the same. The referee has not passed upon the question, by making a direct finding on the subject, whether the note made by Warner and indorsed by Church was received by the bank in payment or in renewal of the balance then unpaid on the original discount. For the purpose of determining the order in which the money realized on the sale shall be applied upon the several items of indebtedness we deem it unnecessary to determine that question for, however the fact may be, the order of distribution should not be changed. The insolvency of both Church and Warner is the cause of the controversy between the bank and Moore. If the order of distribution is sustained, then the bank suffers a loss in a sum equal to the amount unpaid on the Warner note after

making the application as now provided. If the order is reversed and the bank is permitted to apply the funds in payment of that note in full in the first instance, then Moore must sustain an additional loss equal to that sum. The rule of law invoked by the bank in support of its position is the familiar one, that when a debtor makes a payment to his creditor of a sum of money to be applied upon his indebtedness and gives no direction whatever as to its application at the time of payment, the creditor is free to apply the money on any security which he may hold and select to be paid out of such money. This as a general proposition is conceded. In a note to the case of *Field* v. *Holland* (1 Am. Lead. Cases, 362, 294*), it is said : " The principle adopted by the common law appears to be the reasonable one that the ownership of the money determines the right of appropriation. Before the money is paid, that is, while it belongs to the debtor, he may direct any application that he pleases. But if he pays the money without directing any appropriation, the money becomes absolutely the property of the creditor, and being his own he may do with it what he will." This rule also has its application in a case where a debtor assigns property to his creditor as collateral security for several debts, without direction at that time by the assignor as to the application of its proceeds. The creditor may apply the money realized to any of the notes that are due at the time the money is received. (*Nat. Bank of Newburgh* v. *Bigler*, 83 N. Y., 51, 64.)

But in applying this rule to particular cases, it is made to yield so as to guard and protect the intervening equities of other parties. In this case the debtor pledged his property as a collateral security for the payment of all his indebtedness to the bank, and the moment the mortgage was delivered and accepted by the bank, Moore, as an accommodation indorser and acceptor for Church, became interested in the preservation of the security, and has the equitable right to demand that the money realized on the sale of the mortgaged premises shall be applied as directed by his principal. The bank, upon accepting the mortgage as a further security for the payment of its indebtedness, assumed an obligation in behalf of the surety to keep and preserve the mortgage lien for his benefit and protection, in case he was obliged to pay the debt for which he had become liable. The bank could not release the mortgage, or in any way

impair it as a security, and thereafter hold Moore liable as an acceptor or indorser. If Moore had paid the debts for which he was liable as surety, before the mortgage was foreclosed, he would have had the undoubted right to be subrogated in the place of the bank. (*Cory* v. *Leonard*, 56 N. Y., 494; *Hayes* v. *Ward*, 4 Johns. Ch., 123; *Mathews* v. *Aikin*, 1 Comst., 595.) It is a well settled principle that a surety who pays the debt of his principal will, in equity, be substituted in the place of the creditor to all securities held by him for the payment of his debt. (3 Kent's Com. 124.)

The security having been converted into money and brought into court, subject to its order, and Moore being a party to the action, it is just and equitable that the money should now be applied so as to completely protect his interest. In view of the facts of the case it would be a clear invasion of Moore's rights, to permit the bank to apply the funds in full payment of an item of the indebtedness upon which he is not liable, and thus increase the balance which would remain unpaid on the obligations where his liabilities are those of an indorser only.

The basis of distribution adopted by the referee is fully sustained by the case of *Cory* v. *Leonard* (56 N. Y., 494). In that case a bank was the holder of several notes, separately indorsed by different persons. The debtor executed and delivered to the bank, as collateral security, a mortgage, for the purpose of securing the payment of all the notes upon which the indorsers were severally liable. The indorser of one of the notes paid all of them in full to the bank, and took from it an assignment of the indebtedness, and also of the mortgage. The assignee then sought to secure from the other indorser the full payment of the note upon which he was the sole indorser, and to exclude him from participating in the money secured from the mortgage by applying the entire proceeds upon the notes on which the assignee alone was liable as indorser. It was held by the court that it was the duty of the creditor to hold the mortgage security for the equal benefit of each of the indorsers, as their interest appeared, and that neither the bank nor its assignee could defeat or impair the interest of the other indorser.

In effect, the bank is seeking in this case to accomplish the same that was attempted by the bank and its assignee in the case cited. By the terms of the judgment as originally entered, Moore was

deprived of the benefit of a security which his principal had placed in the hands of the bank for his protection; and the order of the Special Term corrects the error in this respect.

We are cited by the learned counsel for the appellant to the case of the *National Bank of Newburgh* v. *Bigler* (*supra*) in support of his argument. In that case it will be observed that the rights of the sureties were not involved, and that the rules of law applicable to a case like the one now before us were not considered by the court.

The respondent Moore has not appealed from the order, therefore he is in no position to urge upon the attention of the court the proposition, that in equity all the funds derived from the sale should be applied, in the first instance, in payment of the paper indorsed by him.

We have examined the exceptions taken to the reception of evidence, and fail to discover any error that should lead to a reversal of the order. The only question in dispute in the whole case is, whether Moore was a principal or a mere surety on the paper to which he is a party; and all the evidence received upon that subject appears to us to be competent.

The report and order of confirmation should be affirmed, with ten dollars costs and disbursements

All concur.

Order affirmed, with ten dollars costs and disbursements.