CHAPMAN and CRANDALL *vs.* JENKINS

Where a chattel mortgage is given to secure the surety and indorser of a note made by the mortgagor, and such note, after being protested for non-payment, is paid out of the proceeds of a new note made by the mortgagor and indorsed by the mortgagees for that express purpose, the mortgage is not discharged by the payment of the original note, but continues in force, as a security to the mortgagees, for the amount of the second.

In such a case it is proper to show that the payment of the original note with the proceeds of the second was not designed to extinguish the mortgage.

APPEAL from a judgment of the Madison county court, reversing a judgment of a justice's court. The plaintiffs sued to recover the value of a horse, which one Michael B.

Hutchins had mortgaged to them, to secure them as his indorsers on a bank note for $150, dated November 9, 1855, which horse the defendant had caused to be taken and sold on an execution in favor of himself and partner, against said Hutchins and partner, and which was bid in by him and converted to his own use. The defendant denied generally the allegations of the complaint, and set up the judgment and execution, and a sale thereon. The principal question raised on the trial, was whether the mortgage given by Hutchins, to secure the plaintiffs, as his indorsers on said note, was a security to them, as such indorsers, after the note had been protested and taken up, by money raised on a new note signed by Hutchins and indorsed by the plaintiffs, for that express purpose.

On the trial, the execution of the original note was proved. It was in these words: "$150. Sixty days from date, I promise to pay to the order of Clark Hebbard and N. R. Chapman, one hundred and fifty dollars, at the Crouse Bank. Manlius, November 9th, 1855.           M. B. HUTCHINS,
                                        ROSS CRANDALL."

(Indorsed)
        "Clark Hebbard,
          N. R. Chapman."

The execution of the chattel mortgage, and the filing thereof, previous to the levy under the execution, were also proved. It was also proved, by the plaintiffs under objection by the defendant, that at the time the mortgage was executed, it was the understanding that the plaintiffs were to reindorse, to take up the first note which the mortgage was given for, and that the first note was paid by Hutchins, at the Bank of Syracuse, on or about the 10th day of January, 1856, by money received by him from the Chittenango Bank, on a note bearing date on that day, made by him and indorsed by the plaintiffs, and that this note at the Chittenango Bank was paid by Hutchins, by paying $10 from his own individual funds, and the residue, $140, by funds obtained on a note for that amount, made on the 16th day of February, 1856, by

Hutchins and indorsed by the plaintiffs, payable at the Chittenango Bank, sixty days from date. The last note was not paid by Hutchins, and the plaintiffs produced it upon the trial.

The recovery of the judgment, by the defendant, against Hutchins and his partner, the issuing of the execution and sale of the horse thereon, and the forbidding the sale of the horse on the execution, and the demand thereof by the plaintiffs, were each fully proved.

The plaintiffs claimed that the mortgage extended to and was a security to them, against the payment of the last note, under the arrangement that they were to reindorse, to take up the note mentioned in the mortgage. The jury found a verdict in favor of the plaintiffs for $70, and the justice rendered a judgment for that sum, with costs. The defendant appealed to the Madison county court, and that court reversed the judgment. The plaintiffs then appealed to this court.

*N. R. Chapman,* for the appellants.

*D. W. Cameron,* for the respondent.

*By the Court,* PRATT, J. No question was raised upon the trial before the justice, or upon the argument, that the mortgage was not valid as against creditors. The simple question for examination is whether it was discharged by the payment of the original note with the proceeds of the new note. If the new note had been discounted by the same bank that held the old one, it is clear, upon abundant authority, that the mortgage would not be discharged. When new securities are given for the mortgage debt, the mortgage will not be deemed discharged, unless there be an express agreement to that effect. (3 *Kernan,* 556. 1 *Comst.* 500. 20 *Wend.* 17.) And the principle of the rule has been extended to indorsers. Thus, in *Pond* v. *Clark and others,* (14 *Conn. R.* 334,) it was held that "when a mortgage was given conditioned to save the mortgagee harmless from his indorsement of specified notes, and

such notes as they became due were renewed by the substitution of other notes or drafts having different names on them, but the obligations of the original indorsement by the mortgagee was preserved through all the renewals, and the substituted paper was ultimately discharged by him, the mortgage remained in force as security for the subsequent indorsements. By the change of parties the original notes were satisfied, and yet the mortgage was held not discharged. (*See also* 2 *Rich. S. Car. Rep.* 427. 10 *B. Monroe,* 98. 14 *Conn. Rep.* 472. 10 *N. H. Rep.* 210. 4 *John. Ch.* 65. 6 *Paige,* 583. 23 *Ala. Rep.* 797. 8 *Pick.* 522. 1 *Strob. Eq.* 257. 19 *Verm. Rep.* 172. 16 *id.* 630. 16 *Pick.* 22. 1 *Hill. on Mort.* 450, 451.)

In the case at bar the justice was authorized to find from the testimony that the second note was, in substance, as between Hutchins and his indorsers, simply an extension of the first note, and that it was made and discounted for the express purpose of taking up the first note. Premising thus much, I think a correct conclusion is by no means difficult to be arrived at. Crandall signed and Chapman indorsed the note of November 10th, for the accommodation of Hutchins, the mortgagor. To secure the payment of the note, and to indemnify his sureties against the obligations which they had assumed for him, Hutchins executed and delivered to them the mortgage in question. The note was not paid when due, but was protested and the sureties duly charged. The mortgage thereby became absolute, and vested in the plaintiffs the entire legal title in the property. All that was left in the mortgagor was the equitable title to redeem. There was no interest left in him that could be sold, even upon execution.

How have the plaintiffs been divested of this title? A tender of the amount due would not divest it. Nothing short of actual payment of the amount due, and acceptance by them, would divest it. Has there been any such payment? Has their liability been in any manner discharged? This cannot be contended. There has at most been a substitution of one liability for another. Suppose the plaintiffs themselves had

Chapman *v.* Jenkins.

paid up the first note and had the cancelling iron stamped upon it; it is clear that the mortgage could not be discharged, for it was given expressly to secure them against loss in case of such contingency. Wherein does this case differ? The money with which the note was taken up was raised upon their indorsements and for that express purpose. It is clear that the condition of the mortgage has not been fulfilled, either technically or potentially. The liability of the plaintiffs has not been discharged by Hutchins according to the condition.

A point was taken that the plaintiffs had not paid the new note, but I do not see how that is material. The mortgage became absolute as soon as the indorsers become fixed, when the mortgagor failed to pay the first note at maturity, and the property became vested in them. It could only be divested, therefore, by their discharge from such liability; and having the legal title, they have the right to maintain an action for its conversion. The parol evidence, showing the relation of the parties to each other and to the mortgage and the original note, was perfectly competent. The understanding between themselves must necessarily be proved, in order to show such relation—to show which party to the note was principal and which sureties. It was proper to show that the payment of the first note with the proceeds of the second was not designed to extinguish the mortgage.

Judgment of the county court reversed, and that of the justice affirmed.

[ONEIDA GENERAL TERM, January 5, 1857. *Hubbard, Pratt, Bacon* and *W. F. Allen,* Justices.]