THE NATIONAL BANK OF NEWBURGH, Respondent, *v.* JAMES BIGLER et al., Appellants.

A mortgage was executed to M. and S., who were copartners, doing business under the firm name of M. & Co. It was expressed in the condition of the mortgage that it was intended among other things, "as a continuing security and indemnity" to the mortgagees "for and against all liabilities they then had incurred or might thereafter incur as indorsers, acceptors or sureties in any form," for J. B., one of the mortgagors, or

the firm of J. B. & Co. *Held*, that the mortgage included not merely such liabilities as were incurred by the mortgagees jointly as copartners, but such as were incurred by either of them, separately and individually.

After the delivery of the mortgage M. died; by the articles of copartnership it was stipulated that in case of the death of one of the partners, the survivor should continue to carry on the business for the benefit of both parties, for a time specified after such death. *Held*, that the authority thus conferred, if valid and operative (as to which *quære*), did not authorize the survivor to bind the estate of the deceased by new accommodation indorsements, nor did it permit and make valid an indorsement of the firm executed by the survivor as a renewal of an indorsement made in the life-time of the deceased, and with his assent.

At the time of the death of M. plaintiff held the paper of J. B. & Co., indorsed by M. & Co. to a large amount. Upon the request of B. & Co. and with the concurrence of S. and the assent of the executors of M., an arrangement was made to the effect that the mortgage should be assigned to plaintiff, that the paper held by the latter should be protested at maturity, and as each note matured, J. B. & Co. should make a new note for the same amount, to be indorsed by S. and discounted by plaintiff, the proceeds to be credited to S., and therewith he was then to take up the old note and pledge it to plaintiff as security for the new one; it being the intention of the parties, as the court found, that the paper so held at the death of M. was not to be paid or extinguished, but kept alive against all the parties. This arrangement was carried out. *Held*, that it did not operate as a payment of the notes secured by the mortgage; that no presumption of payment arose from the taking of the renewal notes; also that the assignment transferred to plaintiff the right to enforce the mortgage security.

*It seems*, that plaintiff, had there been no agreement, would have been equitably entitled to an assignment of the mortgage.

Also, *held*, that the mortgage was not one of indemnity merely, but was a security as well, against all liabilities, and that, therefore, it was not essential to a recovery to show that damages had been sustained; that the right of the mortgagees to resort to the security arose when their liability, as indorsers, was fixed.

The distinction between a covenant to secure against liability and one to indemnify against damages by reason of non-performance of some specified act, pointed out.

Some drafts drawn by J. B. & Co. and indorsed by M. & Co., before the death of M., were taken up with the proceeds of new drafts, indorsed by S., and discounted by plaintiff, who received the old drafts in pledge under the agreement. *Held*, that the transactions were renewals, not payments, and that at least the liability of S. on the new paper was sufficient to make the mortgage available to the plaintiff as security therefor.

*It seems*, that the right of a debtor making a payment to direct upon which

one of several distinct liabilities or demands, *held*, by his creditor, it shall be applied, must be exercised at the time of payment; if he makes a payment without directing at the time as to its appropriation, the money becomes absolutely the property of the creditor and he may apply it as he chooses.

So, where the debtor assigns property as collateral security generally without dictating upon what demand its proceeds shall be applied, he cannot bind the creditor by any subsequent direction, but the latter may apply such proceeds to any of the demands held by him which are due at the time the money is received.

Defendant M. A. B. who owned an undivided interest in the mortgaged premises joined in the mortgage as security for J. B. & Co.; it was claimed on her behalf that the arrangement with the plaintiff for renewals operated as an extension of the time of payment; that after the death of M. no effectual consent to an extension, binding the firm of M. & Co., could be given, and that thereby the liability of M. & Co. was released. *Held*, untenable, as no valid agreement extending the time of payment of the original notes was shown.

Where, in an agreement for an extension of the time of payment made between a creditor and the principal debtor, the right to proceed against the surety is reserved, such agreement is held to be conditional upon the assent of the surety, and he is not discharged thereby.

(Argued November 10, 1880; decided November 30, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made July 18, 1879, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Mem. of decision below, 18 Hun, 400.)

This action was brought to foreclose a mortgage.

The material facts appear in the opinion

*Theodore F. Miller* for appellants. The dissolution of the partnership of David Moore & Co. by the death of Moore put an end to the authority of the survivor to bind the firm by any new engagement. (*Van Keuren* v. *Parmelee*, 2 N. Y. 524, 533; *Natl. Bk.* v. *Norton*, 1 Hill, 572; *Millard* v. *Thorne*, 56 N. Y. 402; *Bloodgood* v. *Bruen*, 8 id. 362; Collyer on Part., p. 170, note 3; *Powell* v. *Smith*, 8 Johns. 250; *Witherby* v. *Mann*, 11 id. 518; *Rodman* v. *Hedden*, 10 Wend. 498; *Howe* v. *Buff.*, *N. Y. & Erie R. R.*, 37 N. Y. 297; *Doolittle*

v. *Dwight*, 2 Metc. 561; *Lee* v. *Clark*, 1 Hill, 56; *Drake* v. *Porter*, 13 Hun, 662; *Rector, etc.*, v. *Higgins*, 48 N. Y. 537; *Barnard* v. *Campbell*, 55 id. 456, 464.) The law, in the absence of directions, applies a general payment, so as to release a security. (*Dows* v. *Moorewood*, 10 Barb. 183.) A debtor who pays money to a creditor has the right to direct how the payment shall be applied. (*Hall* .v. *Constant*, 2 Hall, 209; *Stone* v. *Seymour*, 15 Wend. 19; 19 id. 19; 9 Wheat. 720; *Pattison* v. *Hall*, 9 Cow. 747; *Sheppard* v. *Steele*, 43 N. Y. 61; *Matthews* v. *Sheehan*, 69 id. 585, 590; *Wheeler* v. *Newbould*, 16 id. 392, 398.) A surety to a surety, so far as the creditor is concerned, has all the rights of a surety. (*N. Y. State Bk.* v. *Fletcher*, 5 Wend. 89.) The contract of a surety is strictly construed in his favor, and will not be extended to a case not clearly within its terms, and the bank's dealings clearly released this defendant. (*Moore* v. *Paine*, 12 Wend. 123; *Grant* v. *Smith*, 46 N. Y. 96; *Ducker* v. *Rapp*, 67 id. 464; *Bush* v. *Lathrop*, 22 id. 535.) Plaintiff having assented to an extension of the time of payment to the principal debtors of the whole of their debt after the death of David Moore, this, in the absence of any person authorized or competent to represent him, discharged his estate, and the liability of David Moore & Co. as a firm. (*Place* v. *McIlwain*, 38 N. Y. 99; *Putnam* v. *Lewis*, 8 Johns. 382; *Myers* v. *Willey*, 5 Hill, 463; *Fellows* v. *Prentiss*, 3 Denio, 518; *Bangs* v. *Mosher*, 23 Barb. 478; *Fisher* v. *Marvin*, 27 id. 159; *Hubbard* v. *Gurney*, 64 N. Y. 466; *Calvo* v. *Davies*, 73 id. 211.) After the death of David Moore, his representatives became *quasi* sureties to the plaintiff Stevens. (*Cosgrove* v. *Tallman*, 67 N. Y. 95; *Nat'l Bk.* v. *Norton*, 1 Hill, 572; Story on Partnership, § 343; Parsons on Partnership, 352.)

*E. A. Brewster* for plaintiff, respondent. Taking a new note, even that of a third person, is not payment of a pre-existing debt, unless so intended. Where the intention to keep the original debt alive appears affirmatively, such intention must prevail over any presumption arising out of any changes in the

notes or other evidences of the debt. (*Tobey* v. *Barber*, 5 Johns. 68; *Highland Bk.* v. *Dubois*, 5 Denio, 558; *Noel* v. *Murray*, 13 N. Y. 167; *Hill* v. *Beebe*, id. 556; *Bates* v. *Rosecrans*, 37 id. 410; *Jagger Iron Co.* v. *Walker*, 76 id. 521; *Feldman* v. *Beier*, 78 id. 298.) Taking new notes for the mortgage debt did not discharge the mortgage. When the new paper falls due and is not paid, the creditor may resort to the mortgage which was given for the original debt. (*Chapman* v. *Jenkins*, 31 Barb. 164; *Pond* v. *Clark*, 14 Conn. 334; *Crosby* v. *Crafts*, 5 Hun, 327; 69 N. Y. 607; *Nightingale* v. *Chaffee*, 11 R. I. 609; *S. C.*, 23 Am. Rep. 531.) The case is the same in substance and principle as if the mortgage had been made directly to the plaintiff, upon the familiar principle of equity that the creditor is entitled to all the securities given by the principal debtor to his surety. ( *Vail* v. *Foster*, 4 Comst. 312; *Curtis* v. *Tyler*, 9 Paige, 432, note, p. 435; *Moore* v. *Paine*, 12 Wend. 123; *Crosby* v. *Crafts*, 5 Hun, 327; 69 N. Y. 607.) The indorsement of Stevens individually upon the notes of Bigler, after the death of Moore, for the purpose of protecting the indorsements of D. Moore & Co., were within the scope and intent of the indemnity of the mortgage in question. (*Hill* v. *Packard*, 5 Wend. 376; *Buffalo City Bk.* v. *Howard*, 35 N. Y. 500; *Staats* v. *Howlett*, 4 Denio, 559, 566; Collyer on Partnership, § 345.) The right of a debtor making a payment, to direct the application of such payment, must be exercised at the time the payment is made. (Am. Lead. Cas. 294; *Field* v. *Holland*, 6 Cranch, 8; *Harding* v. *Tifft*, 75 N. Y. 461; *Allen* v. *Culver*, 3 Denio, 284.)

*A. S. Cassedy* for defendant, respondent. Sureties are entitled to the benefit of all securities which may have been taken by any one of them to indemnify himself against their joint liabilities for their principal. The security taken by one inures to the benefit of all. (*Elwood* v. *Dezendorf*, 5 Barb. 398; *Hill* v. *Packard*, 5 Wend. 376.) A creditor shall have the benefit of any collateral securities which the principal debtor has given to the surety, or person standing in the situation of

surety, for his indemnity. (*Maura* v. *Harrison*, 1 Eq. Cas. Abr. 73; *Curtis* v. *Tyler*, 9 Paige, 432; *Wright* v. *Morley*, 11 Ves. 22; *Bk. of Auburn* v. *Thorp*, 18 Johns. 505; 4 Kent, 307 [6th ed.]; 1 Story's Equity, §§ 502, 638; *Crosby* v. *Crafts*, 12 N.Y. Sup. Ct. [Hun] 327; 4 N. Y. 312; 7 Paige, 627; 3 Sandf. Ch. 428; 9 Paige, 432; *Bank* v. *Douglas*, 4 Watts [Pa.], 95.)

FINCH, J. The mortgage, which is the subject of the present controversy, was given by the defendants, James Bigler and wife, and Mary Augusta Bigler, to David Moore and Halsey R. Stevens. The latter were copartners, doing business under the name of David Moore & Co. The condition of the mortgage expresses that it was intended as a continuing security to said David Moore and Halsey R. Stevens, for all present or future indebtedness of James Bigler, or J. Bigler & Co. to them, and as a continuing security and indemnity to said David Moore and Halsey R. Stevens, for and against all liabilities they then had incurred, or might thereafter incur, as indorsers, acceptors, or sureties, in any form, for the said James Bigler, or J. Bigler & Co. The General Term held that the security thus provided extended not merely to such liabilities as were incurred by the two mortgagees jointly and as partners constituting the firm of David Moore & Co., but also to such as were incurred by either Moore or Stevens, separately and individually. We accept that construction as correct. If the intention had been to limit the protection to the partnership solely, the mortgage would naturally have been given to David Moore & Co. But the partnership name is entirely omitted, and this omission, at a time when all the liability incurred by the indorsers was that of the firm, indicates strongly a purpose to extend the security beyond the partnership, and far enough to embrace its individual members. Protection, too, was to be secured to the mortgagees against liability incurred for Bigler & Co. in "any form," and that broad phrase is significant of an intention to shield both of the mortgagees in whatever form or manner,

and whether as joint or several promisors they became liable for the debts of the maker of the mortgage. The language chosen is not necessarily restricted to joint liabilities. The conjunction "and" bends always to the manifest intention, and may even be replaced by the disjunctive "or." Then, too, the mortgage was to be a "continuing" security, and, therefore, presumably intended to reach and cover the possible emergency of the death of one of the mortgagees and a separate liability of the survivor. The evident purpose on both sides was to provide for complete and full security to the mortgagees against liabilities incurred by either as well as by both, and such evident intention must prevail where not necessarily opposed and contradicted by inflexible terms, pointing to a different purpose.

Some time after the execution and delivery of the mortgage, and on the 9th of September, 1877, David Moore died. The contingency of a dissolution of the partnership by the death of one of its members was, to a certain extent, foreseen and provided for in the articles of partnership. It was stipulated that in such event the surviving partner should continue to carry on the business for the benefit of both parties until the first day of February next ensuing after the decease of either. It is perhaps not necessary to determine fully the scope or validity of this provision. The doubt expressed in *Ross* v. *Hardin* (79 N. Y. 85), as to how far a person may contract for the care of his property after his death, need not be solved in this case. The contract here was certainly intended, in some degree, to supplant and modify the legal rules which restrain the action of the survivor. To carry on the business, involved, of necessity, the right to contract to a needful extent new liabilities and to make new agreements, plainly within the ordinary scope of the business and essential to its successful management. But the authority thus conferred, if held to be operative, would not authorize the survivor to bind the estate of the deceased partner by new accommodation indorsements, because such would be outside of the business and beyond its scope, and dependent upon a consent which could no longer be given.

And even as to indorsements of that character, existing prior to the dissolution by the death of Moore, and made in his life-time with his assent, we are not prepared to say that the au-thority of the articles would permit renewals, and make valid an indorsement of the firm executed by the survivor; and this for the reason that, if David Moore had lived, the renewal in-dorsements would have required his sanction, because beyond the scope of the partnership business. To such transactions the authority did not, by its terms, extend, and the consent necessary to justify them as partnership obligations was ren-dered impossible by the death of Moore. The rights of the plaintiff, therefore, cannot be upheld by the argument on its behalf, drawn from the peculiar provisions of the articles of partnership.

At the date of David Moore's death the Bank of Newburgh held the paper of J. Bigler & Co., indorsed by David Moore & Co., to the amount of $91,500, soon to mature. It was evi-dent that the pressure of this large indebtedness, if it should fall upon the debtor firms at once, would crush them both. Bigler & Co. had a large claim against the city of New York, to which they looked as a resource for the payment of the debt. But help from that direction could only come slowly, and would require time. The creditor bank was willing to grant delay, but doubtful of the safety of such action, and fear-ful, with the timidity of capital, of legal questions and compli-cations. But upon the request and with the concurrence of Bigler & Co. on the one hand, and Stevens, the survivor of David Moore & Co. upon the other, and with the assent of the executors of Moore, an arrangement was made, out of which grows the first serious question on this appeal.

That arrangement was in substance, that the mortgage given by the Biglers to David Moore and Halsey Stevens should be assigned by the latter, and the executors of the former to the Bank of Newburgh; that the paper held by the bank should be protested at maturity, and the liability of the indorsers fixed; thereupon, as each note matured, Bigler & Co. were to make a new note of the same amount, Stevens was to indorse

it, the bank to discount it, crediting the proceeds to him, and with such proceeds he was then to take up the old note, and pledge it to the bank as security for the new paper discounted. This plan was carried out in detail except, perhaps, as to some paper which may require separate consideration.

It is claimed by the appellants that this arrangement operated as a payment of the notes secured by the mortgage, and the bank, therefore, had no right to foreclose.

There are several satisfactory answers to such a view of the transaction. The trial judge has found, as a fact, that it was the intention of all parties to the transaction, that the notes and drafts held by the bank at the death of Moore were not to be paid or extinguished, but were to be kept alive against all the parties thereto. The evidence abundantly sustains this finding. In the face of such a fact no presumption of payment can flow from the taking of the renewal notes. (*Noel* v. *Murray*, 13 N. Y. 167; *Hill* v. *Beebe*, id. 556; *Bates* v. *Rosekrans*, 37 id. 410; *Jagger Iron Co.* v. *Walker*, 76 id. 521; *Feldman* v. *Beier*, 78 id. 298.) Indeed, not only the substance, but the form of the transaction tended to that result. When the liability of the indorsers was fixed they had the right to take up the notes and hold them, and their collateral mortgage against the makers. Just that the survivor did, and thus possessed of the notes and mortgage, and the right to enforce them against the makers, transferred all those rights to the bank. There was, therefore, no payment or discharge of the original indebtedness as against the makers of the notes, either in fact or form. Nor was there, in truth, any such discharge even of the liability of Moore & Co. That firm took up the paper with the proceeds of renewals discounted by the bank, and whatever might be said as to the right of the survivor to make such renewals and thereby bind the partnership, it is at least certain that they did not constitute a payment which would discharge the liability of Moore & Co. The new notes indorsed by Stevens, so far from working a discharge of that liability, were merely so many broken promises to pay the debt, and it is immaterial whether they were in

truth those of the firm or of Stevens alone. In neither case did they constitute a payment. (*Jagger Iron Co.* v. *Walker*, *supra.*) . If it be argued that since there was in fact no payment by Moore & Co. they could not be said, by taking up the notes, to have acquired the rights against the makers which they assumed to transfer to the plaintiff, the answer is that Bigler & Co. cannot raise the question. As to them, the original notes were taken up by the indorsers, and pledged with the collateral to the plaintiff, even though, as between the indorsers and the bank, certain equities grew out of the form of the transaction with which the makers were not concerned. But even if by a technical and arbitrary construction founded upon the form which the transaction was made to assume, it could justly be said that Moore & Co. were released from their liability to the bank, that was only so upon the condition that their collateral as an effective security should be vested in the bank, and with the entire right which they themselves had to enforce it. Such a discharge of Moore & Co. could of course work no release of the assigned security. And besides the transaction, taken as a whole, is plainly supported by the principle that the creditor is equitably entitled to hold and enforce the security held by the sureties, and may do so independently of the question whether such sureties are in fact released or not. The assignment of the mortgage to the Newburgh bank, which was the voluntary act of Stevens and the executors of Moore, merely accorded to the plaintiff its equitable right to the security held by Moore & Co. as sureties, and to the enforcement of the same. The assignors did simply what they might have been compelled to do, and the plaintiff, holding the security of the sureties, had the right to enforce it, as has been done in this action. (*Vail* v. *Foster*, 4 Comst. 312; *Curtis* v. *Tyler*, 9 Paige, 432; *Moore* v. *Paine*, 12 Wend. 123; *Crosby* v. *Crafts*, 5 Hun, 327; affirmed, 69 N. Y. 607; *Pond* v. *Clarke*, 14 Conn. 334; *Chapman* v. *Jenkins*, 31 Barb. 164; *Nightingale* v. *Chaffee*, 11 R. I. 609.) The force of this position is sought to be broken by the learned counsel for the appellants by the suggestion that the rule is

only invoked in cases where it is called for by some equitable consideration, and he examines the authorities from that standpoint. It is quite true that in most, if not all the cases, some circumstance, like the insolvency or discharge of the surety, was the occasion of applying the principle. Such circumstance added point and force to the justice of the rule, but did not furnish its reason. Its true basis is not to be found in the different and varying circumstances of the cases, but in the equitable consideration common to them all, that the securities in the hands of the sureties have been appropriated by the debtor for the payment of the debt, and constitute a trust for its better security which equity will enforce for the benefit of the creditor. (*Vail* v. *Foster*, and *Crosby* v. *Crafts*, *supra*.)

It is further argued, as an answer to plaintiff's right to foreclose, that the contract evidenced by the mortgage is one of indemnity merely, and that, as no property or assets of Moore & Co. have gone to the payment of the debt, they have suffered no damages and, therefore, cannot utilize their collateral, or authorize their assignee to do so. But the contract is not one of indemnity merely. The mortgage was made as a continuing security for all present and future indebtedness of J. Bigler, or J. Bigler & Co., and as a continuing security *and* indemnity to the mortgagees *for* and *against* all *liabilities* they have or may incur as indorsers, etc. The rule gathered from the cases is that where indemnity only is expressed, damages must first be sustained before a recovery can be had. (*Trinity Church* v. *Higgins*, 48 N. Y. 537.) But the mortgage in the present case was given as security and indemnity against all liability. The authorities on the subject are not harmonious. (*Chace* v. *Hinman*, 8 Wend. 452; *Aberdeen* v. *Blackmar*, 6 Hill, 324; *Churchill* v. *Hunt*, 3 Den. 321; *Gilbert* v. *Wiman*, 1 Comst. 550; Sedg. on Damages, 650.) In the case last cited, the conflict of opinion is said to be reconciled by keeping in view the distinction between an affirmative covenant for a specific thing, and one of indemnity against damage by reason of the non-performance of the thing specified. And the distinction is illustrated by a comparison of the conditions of the

bonds which had been subjected to judicial discussion. Where the indemnity provided is against a " charge," or " fixed legal liability," the obligee is to be saved from the thing specified, and the right of action becomes complete on the defendant's failure to do the particular thing he agreed to perform: while, on the other hand, where the covenant is for indemnity only, and against resultant damages, these must be actually suffered before an action can be maintained. The mortgage in the present case was given as security for, and indemnity against, all liabilities, then or afterward incurred, and the right of Moore & Co. to resort to their security arose the moment their liability as indorsers was fixed.

We have alluded to the fact that some paper held by the plaintiff was arranged in a manner different from the rest, and the appellants now claim that it should have been taken out of the operation of the mortgage, and that the court erred in refusing to do so.

A draft of $2,750, drawn by Bigler & Co. on Mailler & Quereau, and indorsed by Moore & Co., before the death of Moore, was held by the plaintiff, and was a part of the liability protected by the mortgage. This draft matured on the 15th of September, a few days after Moore's death, and was renewed by a new draft of Bigler & Co. on the same parties, indorsed by Stevens. When that draft, which was payable in New York, fell due, Bigler, who happened to be there, took it up to save protest, and, returning at once to Newburgh, substituted a new draft, which the plaintiff discounted. It is quite evident that this transaction was merely formal, and was adopted, under the general arrangement, as a renewal rather than a payment.

The draft of $15,000 was drawn by Bigler & Co. on Mailler & Quereau, indorsed by D. Moore & Co. and William O. Mailler & Co., and was arranged in the same way with the mass of the paper held by the bank, except that it was taken up by Mailler & Co., the last indorsers, with the proceeds of a similar renewal, and then pledged to the bank. When Mailler & Co. took up this draft the liability of Moore & Co., the prior

indorsers, remained, and was fixed by protest, and the pledge of the old acceptance to the bank preserved to the pledgee the liability of Moore & Co., and the right to the protection of the mortgage. Both of these original drafts, as well as their renewals, were produced in evidence by the plaintiff, and, in any event, the liability of Stevens upon the new paper was sufficient, under the construction we have put upon the contract, to make the mortgage available for these drafts to the plaintiff.

The defendants also claim that a payment of about $44,000 to the bank should have been applied according to the directions of Bigler & Co. The facts were, that Bigler held a judgment in May, 1876, against the city of New York, which he assigned, by an assignment absolute in form, to the extent of $50,000, to the plaintiff. The evidence shows that the assignment was intended as a general security to the bank for Bigler's indebtedness, but was delivered without any express condition, and without any direction of the assignor as to the application of its proceeds. This judgment was afterward reversed, but the litigation ended in a compromise, to which Bigler assented, by which the sum in question was received by the attorney prosecuting the proceedings, and paid over by him to the plaintiff as the owner of the claim. Before such payment Bigler formally demanded that the amount received should be applied on certain specified debts, which the bank refused, and, as matter of fact, applied some part of it, at least, upon debts of Bigler which were not within the protection of the mortgage in suit. It is the right of a debtor making a payment to dictate, when he does so, upon what distinct and separate liability or demand, held by his creditor, his payment shall be applied. And this is so because he is the sole master of the money which he proposes to pay, and has the right to extinguish with it whichever of his liabilities he prefers. In the learned and exhaustive note to the case of *Field* v. *Holland*, in 1 American Leading Cases (p. 362, *p. 294), it is said: "the principle adopted by the common law appears to be the reasonable one that the ownership of the money determines

the right of appropriation.   Before the money is paid, that is, while it belongs to the debtor, he may direct any application that he pleases.   *   *   *   But if he pays the money without directing any appropriation the money becomes absolutely the property of the creditor; and being his own, he may do with it what he will."   The difficulty here is, that when this money was paid to the bank it was their own money, and not Bigler's. He had no ownership or control over it, because he had long ago parted with the right to receive it.   Doubtless, when he assigned the judgment as a general collateral, he might have dictated upon what demand its proceeds, when collected, should be applied.   Not having done so, and having parted with his ownership without condition, he cannot dictate what the bank shall do with its own money.   If property is assigned as collateral security for several debts, without direction at that time by the assignor as to the application of its proceeds, the creditor may apply the money realized to any of the notes that are due at the time the money is received. (1 Am. Lead. Cas. 341, *278; *Field* v. *Holland*, 6 Cranch, 8.)   The Special Term, therefore, committed no error in refusing to disturb the application by the bank of the sum in question.

Two other elements in the case remain to be considered, and have been purposely postponed for separate discussion.

At the death of David Moore the Highland National Bank held the paper of J. Bigler & Co., indorsed by David Moore & Co., for something over $50,000. · Nearly one-half of this represented paper which Bigler & Co. had given to Moore & Co. for lumber bought of the latter, and which paper the Highland Bank had discounted for Moore & Co.   The remainder consisted of the notes and drafts of Bigler & Co., indorsed by David Moore & Co., for the accommodation of the makers, and discounted also by the Highland Bank.   That corporation was a party to the arrangement we have described, as made with the Newburgh Bank, and by agreement the two were entitled to share in the proceeds of the mortgage in certain specified proportions.   The Highland Bank, declining to join in the foreclosure of the mortgage as a party plaintiff, was,

therefore, made a party defendant, and appeared in the action setting up its rights in the proceeds of the mortgage. The only difference in the position of the Highland Bank from that of the plaintiff is found in the fact that after the death of Moore, its paper made by Bigler & Co., and bearing the indorsement of Moore &· Co., was renewed by new paper of the same makers, indorsed by Stevens in the name of D· Moore & Co., except that in one instance, he added the indorsement of H. R. Stevens, surviving partner. The view we have taken of the provisions of the mortgage, as protecting each of the mortgagees as well as both, is decisive of the rights of the Highland Bank. The successive renewals in no manner paid or discharged the original debt; the bank had the right to enforce, in equity, the collateral held by Moore & Co.; and was unaffected by the question whether Stevens, as survivor, had, or had not, the right, by using the firm indorsement, to bind the estate of his deceased partner. If he had, the indorsement was that of the firm and was protected by the mortgage. If he had not, at least he bound himself and so was equally protected.

Upon the whole case, as between the banks on the one hand, and Bigler & Co., and Moore & Co. on the other, it is impossible not to see that the contract and intention of the parties have been fairly carried out and executed by the decree; and while it is possible to raise technical difficulties, yet none of them are such as to require a reversal of the justice which has been done.

There remains only the inquiry how the defendant Mary A. Bigler is affected by these transactions, and whether the judgment of foreclosure can stand as against her. She owns an undivided third part of the property covered by the mortgage, and joined in its execution at the request of her father, as security for J. Bigler & Co. It is claimed upon these facts that she is surety to the sureties of J. Bigler & Co., and has all the rights of a surety. This is, perhaps, an accurate statement of her relation to the parties but not quite of its legal

characteristics. However that may be, the argument presented in her behalf is sufficiently plain and distinct.

It is insisted that the arrangement with the Newburgh bank for renewals operated as an extension of the time of payment to the principal debtor, and thereby the liability of David Moore & Co. as a firm was released, and hence, no liability of theirs remaining, the security for such liability is discharged. It is not denied that Stevens consented, and the executors of Moore consented, but the argument is that after the death of Moore no effectual consent, binding the firm of Moore & Co., could be given. We need not consider that question, for the very foundation of the argument is wanting. No valid agreement to extend the time of payment of the original notes is shown. No such fact is found by the court, and no such request to find was made. The agreement with the banks was precisely the reverse. The old notes were protested and not extended. They were taken up by the indorsers, and the liability of the makers to them was transferred to the bank without any agreement, express or implied, for an extension of that liability. In neither of the agreements of April 2d or April 10th was there any stipulation to give additional time to the makers, and we cannot infer it from renewals which were themselves secured by the pledge of the old paper, due and unextended, and so by the understanding of the parties intended to remain. (*Cary* v. *White*, 52 N. Y. 138; *Hubbard* v. *Gurney*, 64 id. 458.) Indeed, it was an essential part of the transaction, expressly stipulated between the parties, that the banks might proceed to enforce the collateral mortgage whenever they thought best. Where the right to proceed against the surety is thus reserved, the agreement for an extension of time is held to be conditional upon the assent of the surety, and the latter is not discharged. (*Calvo* v. *Davies*, 73 N. Y. 217; *Morgan* v. *Smith*, 70 id. 545.) In no sense, therefore, can it be said that there was an extension of the time of payment to Bigler & Co. which operated to discharge Moore & Co., or affect the rights of Mary A. Bigler. If, as respects this question, there is any difference in the situation of the Highland Bank from

that of the plaintiff, we are relieved from its consideration by the concession, made on the argument, that the rights of that bank should follow and be determined by our conclusions as to the rights of the plaintiff.

There is nothing, therefore, in the position of Mary A. Bigler to change or modify our opinion as to the right of the plaintiff to its decree of foreclosure. That judgment seems to us just and not open to the objections which have been urged against it. It should, therefore, be affirmed with costs.

All concur.

Judgment affirmed.