JACOB CROUNSE *v.* THE SYRACUSE, CHENANGO AND NEW YORK RAILROAD COMPANY AND OTHERS, RESPONDENTS.

GEORGE N. CROUNSE AND FRANKLIN WALRATH, APPELLANTS.

*Undertaking given upon procuring an injunction — what expenses incurred in procuring its dissolution may be allowed as a part of the damages — it is sufficient if the expenses be actually incurred, they need not have been paid.*

From January, 1879, to May, 1883, the defendant, a railroad company, was in the hands of a receiver, and for more than two years it had had no board of directors. The General Term of the Supreme Court had held that the property could not be taken from the hands of the receiver until a board of directors was elected, and that a board could only be elected on the day fixed by the by-laws for an annual election, which was May 4, 1883. On that day, pursuant to notice, a meeting of the stockholders was held, at which $76,000 out of $80,000 of the stock was represented. Immediately after the meeting was organized, an injunction, forbidding an election, was served. The injunction had been granted the day before by the county judge. This injunction could only be vacated, without notice, by the officer who granted it, or by the General Term of the Supreme Court which was then sitting at Binghamton. As there was no regular train by which the defendant's counsel could then reach Binghamton on that day, a special train was hired by which the counsel was taken to that place, where the injunction was immediately vacated. The election was held, and on May seventh the action was discontinued by the plaintiff.

Upon a reference to ascertain the damages sustained by the injunction :

*Held,* that the amount paid to the railroad company for the extra train, $200, was properly allowed as part of the damages sustained.

The defendants had incurred a liability to the amount of $375 to its counsel, for services rendered in procuring the dissolution of the injunction.

*Held,* that it was proper to allow that sum as a part of the damages, although it had not been actually paid out by the defendant at the time of the reference.

APPEAL from an order made at a Special Term, confirming the report of a referee appointed to ascertain the damages sustained by an injunction granted herein.

*Charles M. Platt,* for the appellants.

*Louis Marshall,* for the respondent.

HUN—VOL. XXXII.    63

LEARNED, P. J.:

This is an appeal from an order confirming the report of a referee, appointed on application of defendants for an assessment of the damages, sustained by them by reason of an injunction.

The circumstances under which the injunction was granted are peculiar. The Syracuse, Chenango and New York Railroad Company had been in the hands of a receiver from January, 1879, to May, 1883, and for two years it had had no board of directors. It had been held by the General Term that, until a board of directors should be elected, no order could be made to restore the property to their control and to discharge the receiver. It was thought that nothing could be done, except to wait until the day fixed by the by-laws for an annual election, and then to hold the same; and that at no other time, under the existing circumstances, could an election be had. The day thus fixed was May 4, 1883. On that day, pursuant to notice, a meeting was had of the stockholders, at which some $76,000 out of $80,000 of stock was represented. The meeting was organized at ten A. M.; and immediately thereafter the injunction in question was served on the stockholders present, forbidding an election. It had been granted by the county judge of Madison county, the previous day.

At this time the General Term of the Third Department was in session at Binghamton. It was decided by the counsel for the defendants to apply at once to that court for a dissolution of the injunction, under section 626 of the Code. That was the only court or officer that could vacate, without notice, except the said county judge. There was no regular train by which Binghamton could be reached that day. The defendants procured a special train, and their counsel went to Binghamton. The injunction was at once vacated by the General Term, and the election took place on the said fourth of May. Thereupon the plaintiff, on the seventh of May, discontinued the action. The actual cost and value of the special train was $200, which was paid by defendants to the railroad company which furnished the train. And the referee has allowed that amount. We think that this was right.

The undertaking is to pay defendants such damages as they may sustain by reason of the injunction. The rules, as to the amount of damages which can be recovered, are stated in *Hovey* v. *Rubber Tip*

*Pencil Company* (50 N. Y., 335); *Andrews* v. *Glenville W. Company* (Id., 282); *Roberts* v. *White* (73 N. Y., 375); and we need not repeat them. The question whether the defendants were justified in incurring this unusual expense must depend on the circumstances of the case. Undoubtedly, in an ordinary case, a defendant can, with little, or no, disadvantage, wait for the usual trains. But this case was extraordinary. Unless an election were held that day it was probable (perhaps certain) that none could be held for a year; and therefore no step could be taken for a year to restore the company. Very large interests were at stake, and a large amount of stock was represented at the pending election. It was important that an injunction, thus suddenly sprung upon the defendants, should be at once removed, and that they should be allowed to elect their directors and manage their own affairs. It is not for the plaintiff, whose very questionable act made that application to the General Term necessary, now to criticize the expenditure to which the defendants were put. It seems to us to have been reasonable and proper. The referee also allows $375 counsel fees on procuring the dissolution of the injunction. No point is made as to the reasonableness of the amount. Nor is it disputed that the amount has been incurred. But the plaintiff insists that it cannot be allowed until it has actually been paid.

Perhaps in this State this question may not have been distinctly decided, except in the case cited below; but language has been used in two or three instances showing the views of the Court of Appeals. Thus in *Andrews* v. *Glenville W. Company* (*ut supra*, at p. 286), it is said that the party " is entitled to his expenses reasonably *incurred*." And again, at page 287: " Expenses properly *incurred* on the part of the defendant for the purpose of dissolving an injunction were legally allowable as *damages*." Again, in *Hovey* v. *Rubber Tip Pencil Company* (*ut supra*, at p. 337): "A party is entitled to damages not only for all expenses which he has *incurred* for fees and for legal services in removing the temporary injunction," etc. So in *Packer* v. *Nevin* (67 N. Y., 550, at page 533) there is a remark to a similar effect showing that a *charge incurred*, as well as a fee paid, should be allowed.

To *incur* is to *become liable to*, not necessarily to have paid. The case of *Wilde* v. *Joel* (15 How. Pr., 320), in General Term, Superior

Court, sustained the defendant's views.   See, also, to the same point, *Noble* v. *Arnold* (23 Ohio, 264); High on Injunction, § 1688; *Underhill* v. *Spencer* (25 Kan., 71).

Of course the distinction is familiar between a mere indemnity against damages and an indemnity against liability.   (See *National Bank* v. *Bigler*, 83 N. Y., 51.)   But probably the cases in regard to indemnities, strictly so called, are hardly applicable.   The parties to the undertaking, by its terms, do not agree to indemnify, but to pay such damages as the defendant may sustain.   Nor is the undertaking given to protect the defendant against the acts of some third person, or against some consequence of the defendant's own acts; as is often the case in bonds of indemnity.   The undertaking is to protect the defendant against acts of the plaintiff which may prove to have been unjustifiable.   There is every reason, therefore, for giving a construction to the undertaking which shall protect the defendant against damages *incurred*, if caused by the plaintiff's unjustifiable act.   The defendant should be made *secure*, and should not merely be indemnified.   This seems to us the just construction to be put upon this contract, considering its language and its purpose.   It is the construction, as above shown, held in the Superior Court in one text-book, and in two sister States.

These are the only questions presented by the appellants.

The order should be affirmed, with ten dollars costs and printing disbursements.

Present — LEARNED, P. J., and BOARDMAN, J.; BOCKES, J., not acting.

Order affirmed, with ten dollars costs and printing disbursements.