HENRY *et al. v.* DIETRICH.

*(Superior Court of Buffalo, General Term.*   November 19, 1889.)

1. APPLICATION OF PAYMENTS.

A bill of particulars for goods sold set out items of the account from May 13, 1887, to June 21, 1887, with items of payments made during that time.   It appeared that plaintiffs were a firm to which a third partner was added June 1st without the knowledge of defendant, who thought he was dealing with the old firm.   Nothing was said by either plaintiffs or defendant as to the application of payments made by defendant after June 1st.   Plaintiffs applied them on the account from June 1st, and recovered a judgment for balance due on the account from May 13th to June 1st.   *Held*, that plaintiffs the old firm were entitled to so apply them.

2. PLEADING AND PROOF—VARIANCE.

Plaintiffs were not bound by the demand of the complaint nor the statement in the bill of particulars, where the question litigated was the amount due the old firm, and no suggestion of variance between the evidence and the statement was raised.

BECKWITH, C. J., dissenting.

Appeal from municipal court.

Action by Rudolph Henry and another, trading as Henry Bros., against Nicholas F. Dietrich, for goods sold and delivered.   There was a judgment for plaintiffs and defendant appeals.

Argued before BECKWITH, C. J., HATCH and TITUS, JJ.

*E. B. Vedder*, for appellant.   *John R. Hazel*, for respondent.

HATCH, J.   The complaint is for meat sold defendant on account and demanded judgment for $154.18.   Accompanying the complaint is a verified bill of particulars, filed by plaintiff, which sets out items of the account commencing May 13, 1887, and ending June 21st in the same year, amounting in the aggregate to the sum of $270.74.   Commencing with May 31, 1887, and ending on June 21st, same year, defendant was credited with four items of payments, amounting in the aggregate to $115.56.   This sum is in the bill of particulars deducted from the $270.74, leaving a balance, as therein stated, of $154.18.   It should be, when correctly subtracted, $155.18.   The answer, as appears from the statement of the return, was a general denial; but the answer, as returned, not only denies, but alleges a portion of the meat sold to be bad, on account of which no liability arose, also a counter-claim for overpayments.   No testimony was offered to show payments beyond such as were admitted, and no attempt was made to show any of the meat bad.   On the trial it appeared by the testimony of Rudolph Henry that he and his brother composed the firm of Henry Bros.; that such firm was so continued down to and including the 31st day of May, 1887.   On June 1st following one Swain became a member of the firm, and so remained during all subsequent dealings between the parties.   No formal change was made in the heading of the account kept between the parties hereto after Swain's entry into the firm.   On said 31st day of May defendant was indebted to plaintiffs upon the account in

the sum of $97.50, and on that day paid, to apply thereon, $25. Commencing with June 3, and ending June 21, 1887, defendant obtained from time to time various quantities of meat, aggregating in amount $173.24, the first item of which amounted to $40.04; and he thereafter paid, according to the testimony of plaintiff, $90.56, and, according to the testimony of defendant, $80.56. This was the *status* of the accounts when this action was brought. Plaintiff testified upon the trial to the sales of the meat, the payment of the $25 and also the subsequent sums, and says: "At the time he paid these last payments he owed me for the [first] items above stated. I don't know whether I ever told Dietrich that Swain had come in. The only payments he ever paid before Swain went into copartnership was $25. He owes plaintiff a balance of $72.50. *Cross-Examined.* I made up the $72.50 by adding up the items before read,—$97.50,—and deducting $25." The defendant testified that he knew nothing about Swain's being a partner until the trial; that he made all the payments upon the whole account, and had no talk as to what account they should be applied on; and that he owed no money for meats bought since the 31st of May, when he made the payment of June 3d, of $15.56. *Cross-Examined.* "At that time, May 31st, I paid $25 on this account, and owed the balance,—$72.50. I had nothing more until June 3d. Then they struck a new account. What I paid on June 3d—$15.56—was on the new account. *Redirect.* I continued right on as I began. They never told me any different. I knew of no new account. I kept it in one account." The plaintiff then gave evidence of the meats sold after the formation of the new firm as hereinbefore stated. With an exception, to be hereafter noted, this constitutes all the evidence. The claim is now made that this action cannot be maintained, for the reason that it clearly appears that the payments made should have been and were applied upon the earlier items of the account, and that they were more than sufficient to extinguish them; that, if a right of action exists, it is in favor of the members constituting the new firm. The doctrine respecting the application of payments is reasonably well settled. A debtor has the right, when making a payment, to dictate, when there are separate accounts, upon which account the money so paid shall be applied. If, however, he omits to make such direction, but pays generally, the creditor may apply it, as he wills. *Bank* v. *Bigler*, 83 N. Y. 63, 64. If, however, neither party makes the application, the law will apply it in accordance with the justice of the case. *Bank* v. *Webb*, 94 N. Y. 472. We are of opinion, upon the facts in this case, that the court below correctly applied the payments.

Plaintiffs were not concluded by the demand of their complaint, or upon the proceedings, by the statement in the bill of particulars. If in strictness they were bound by the latter, yet the parties appeared and litigated the question upon a claim that defendant was only indebted to plaintiffs in the sum due the old firm, and no objection to the evidence or suggestion was made of any variance between such position and the statement of the bill, but the evidence was all received and submitted to the judge for his determination. Upon the evidence it was quite competent for him to find that not only was it the intention of plaintiff to apply the payments upon the sales made by the new firm, as testified to by him, but he was authorized to find that defendant knew and so understood it, as defendant stated in terms that the first payment made after the formation of the new firm was made to apply upon the new account, which could only have been the account of the new firm. It is true that upon his re-examination he stated that he knew of but one account, and no new one at all; but this simply presented conflicting statements upon the same subject, and it was clearly within the province of the court to say which statement it would credit. In addition to this, the court was also authorized to find from the testimony of defendant that in any event there was something due plaintiffs from defendant. The claim of plaintiffs is

$72.50 and interest. The whole amount of payments credited by plaintiff to defendant, less the first $25, is $90.56,—as stated by defendant, $80.56. As already stated, the first of these items is $40.04, paid for a bill of meat purchased June 3d, as to which defendant testified: "I paid for the purchase of June 3d, $40.04 in cash." This was clearly for the item due the new firm, and, if paid as stated, reduced the aggregate of payments to $50.56, leaving .due $21.94 upon plaintiffs' account, for which they would be clearly entitled to judgment. But, aside from this, we think that it satisfactorily appears that the meats sold by the new firm, upon which payments were made, were their property, for which they were entitled to pay, and that no injustice is done in so applying them. On the contrary, we think the court was authorized to find from the evidence and the circumstances that it was equitable so to do. *Thurber* v. *McIntire*, 9 N. Y. St. Rep. 816. We have no hesitancy in arriving at this result, for the reason that upon the trial no evidence was given or claim made but that defendant was indebted for all the meat sold, less payments. The judgment is therefore affirmed, with costs.

TITUS, J., concurs.

BECKWITH, C. J., (*dissenting.*) I will state my reasons for dissenting from the conclusion reached by a majority of the court. The plaintiffs, Henry Bros., were dealers in meats, and the defendant was a customer. The defendant testified that he had traded with them for three years. This action was brought in the municipal court of Buffalo upon an account for meats sold and delivered to the defendant in the months of May and June, 1887. The plaintiffs filed a verified bill of particulars in amplification of their complaint, setting forth their account of sales to the defendant in the months of May and June, 1887, showing several sales in each month, and in the same bill of particulars crediting the defendant with payments from time to time in the same months of May and June, and demanded judgment for the balance of the account. On the trial it came to light that one Swain was taken into partnership with the plaintiffs on the 1st day of June, 1887; but it is undisputed that the defendant knew nothing of that change in the firm until the coming on of the trial. On the trial Rudolph Henry testified to the sales of meat made in the month of May, and to a payment of $25 the last day of May, but omitted to make proof of the sales in June; thus making a claim for the meats sold in May only. On cross-examination he admitted the several payments made in June, and then made proof of the several sales made in June; that Swain had become a member of the firm June 1st, and that the sales were made by the new firm. The defendant testified that he knew nothing of anybody except the original firm of Henry Bros., and that he kept his account as with them. The judge of the municipal court in his return states that it was conceded by both parties on the trial, although no direct evidence thereof was given and no formal admissions made, that the account which the plaintiffs opened against the defendant when he commenced buying of them was continued without change as to the heading against him after Swain became a partner, as the same appears on the bill of particulars filed in the action. The defendant testified that when he made the payments nothing was said by either party as to how the money should be appropriated, and that in his dealings he knew only Rudolph Henry. This is the substance of the evidence, as, in my opinion, it should be looked at for the purposes of this review. There was some testimony obtained from the defendant respecting a new account in June which I will notice later; and the defendant testified that on a certain day in June he made a purchase of meats amounting to $40.04, and that at the same time he paid $40.04, in full of the same purchase. I regard this item of evidence of no consequence. If the defendant is not mistaken, but, as he says, made specific purchase and paid the purchase price, then the payment left no debt, and

that purchase was an isolated transaction, and is out of the case. If, on the other hand, the $40.04 was not paid on a particular purchase, then the money was to be applied as the other payments were applied. The evidence and the bill of particulars show that after the payment of $25 on the 31st day of May there was a considerable balance due the plaintiffs upon the sales made in that month, which the trial court refused to reduce by applying thereon the payments made in June. In my opinion, those payments ought to have been al-. lowed in reduction of the plaintiffs' account. In the first place, both the plaintiffs and defendant treated them as so applied. The complaint and bill of particulars show that in fact the plaintiffs had so actually applied them, and the defendant kept his account in a way to show he considered them so applied. It is well settled that a plaintiff in an action should not be permitted to change the application of payments after suit brought. In the second place, where there is a running account of that kind upon which payments are from time to time made, the creditor and debtor usually understand that there is to be such an application, and that the purchaser's indebtedness at any time is the balance of the account after setting off the payments against the sales in the order of priorities. And that is the way the law treats the subject by applying payments in discharge *pro tanto* of the items of debit in the creditor's account in the order of the priority of date. This rule of law is founded, I apprehend, on the presumption that such was the intention of the debtor, and the plain understanding of the debtor and creditor, dealing together. *Clayton's Case,* 1 Mer. 579; *Bank* v. *Bank,* 44 Hun, 54; 2 Pars. Cont. 633; *U. S.* v. *Kirkpatrick,* 9 Wheat. 720; 2 Greenl. Ev. § 533; *Truscott* v. *King,* 6 N. Y. 147. Where the only dealings between persons consist of a running account of sales on one side and payments on the other, it is quite clear that they understand that the payments go in reduction of the earliest items in the creditor's account. And in a case where a new party is taken into the firm of the creditors, and nothing is said about it, and the debtor has no knowledge of the change, and continues to deal with the firm as before, buying and making payments from time to time, and the sellers continue to enter and blend the sales in the same account, under such circumstances the conduct of the members of the firm would seem to be an assurance to the customer that their dealings go on in the same manner, without change, and that his payments are applied in the ordinary and customary manner. Otherwise, the debtor would be deprived of his right to distinguish the debt he would pay, to say nothing of his possible unwillingness to make a debt with the new firm. Where there is a change of partners, especially without the knowledge of the debtor, and the dealings are carried on as before, and the sales are blended and continued in the same account, there the authorities seem to hold that payments are to be applied as though no change of partners had taken place, (1 Story Eq. Jur. § 459*e;*) and the rule is the same on the accession of a new partner as on the retirement of a member of a firm, (Will. Eq. Jur. 113.) Especially must this be the rule where from the conduct of all the members of the firm, including the new one, the presumption exists and continues that the dealings are continued upon the same account with the consent of all the partners. *Hooper* v. *Keay,* L. R. 1 Q. B. Div. 178, 16 Moak, Eng. R. 269.

It is undoubtedly true that in the case of the payment of a sum of money by a debtor to a creditor who holds two distinct and independent claims against him that are due, and the debtor gives no direction, expressed or implied, as to which debt he means to make the payment upon, the creditor may apply the payment on either of his demands. In such connection the doctrine has grown up and become a favorite one that he may do so because after payment, without any direction from the debtor, he becomes the owner of the sum of money, and may do what he pleases with his own at any time before trial. This does not seem to me just a proper doctrine of the law of payment, although the fact is indisputable that a man may do what he pleases with his own. The idea of

payment is not that of the transfer of the title of property, but the solution or extinguishment of a debt, and when the object of the act of payment is not expressed by the debtor, nor susceptible of being inferred from the circumstances, the payee may be deemed to be authorized to complete the act according to his own wishes; and some authorities hold that he may do that at any time before an action is commenced. Where a tradesman opens a running account with a customer who from time to time pays sums of money, it would seem that there could be no doubt about what passes in their minds, nor that what transpires is that the debtor supposes that he is making a payment on the general account, and that the creditor knows that the customer so understands it, and accepts the money with that knowledge, and therefore the agreement between them becomes complete that the application of the money will be in accordance with the debtor's intention. When such are the circumstances, there being nothing more in the case, the law, according to a long-established rule,—the principle of which is not always clearly elucidated, —applies the payment to the reduction of the earliest debts of the account. To my view, the circumstances of this case and the evidence show that the plaintiffs herein actually made such application of the defendant's payments; that, whether they did or not, they ought so to have done; that the law, upon the circumstances, made such application; that the coming in of Swain as a partner without the knowledge of the defendant,—the plaintiffs' account being continued in the same manner, sales and payments being made upon the same account without any knowledge of a change being acquired by the defendant,—did not deprive the defendant of his right to say that he made his payments upon the assumption that the ordinary application would be made, and that the plaintiffs, after taking in the new member, accepted the payments with knowledge of the defendant's understanding. The evidence shows no objection on the part of Swain, and the fact that he was interested in the sales made in June, the defendant remaining ignorant of his connection with the firm, raised no equity which required the moneys which the defendant was able from time to time to pay to be applied on the claim in which he was interested rather than the older claim of the plaintiffs; and, the two claims existing, the defendant had the right, had he known of the change in the firm, to direct his payments to be applied to the account of the original firm. My notions of the case are that the plaintiffs actually applied the June payments on their account. (1) They recognized such application even after the commencement of the action by their bill of particulars. (2) That such application was according to the understanding of the parties. The circumstances show there could have been no other intention on the part of the defendant. (3) That such application was required by the established rule of law. (4) The change in the partners being without the knowledge of the defendant,—the account being continued in the same manner as before,—the rule of law still operated as to the payments in June, and the same presumption as to the intent of the debtor and understanding of the parties continued. Accordingly, I think that after the action was commenced the court ought not to have allowed the plaintiffs to change the application of the payments. It looks to me as though the plaintiffs sought to make the change to save judgment going against them, with costs. It is stated in the brief of defendant's counsel that the defense of bad meat applied to the sales made after the 1st day of June.

But there is another piece of evidence which I have so far excluded from consideration. On cross-examination the defendant testified: "At that time, May 31st, I paid $25 on this account, and owed the balance,—$72.50. I had nothing more until June 3d. Then they struck a new account. What I paid on June 3d—$15.56—was on the new account." On redirect examination he said: "I continued right on as I began. They never told me any different. I knew of no new account. I kept it in one account." It appears conclusively that the defendant knew nothing about Swain having become a part-

ner, and what he meant by saying "they struck a new account" is not clear, unless it was that the balance due upon the dealings in May was ascertained and carried over to the account for June, upon which he considered he made his payments. Finding the balance at the end of each month, but continuing the account and dealings in the same way, would not, as I conceive, make any difference as to the intended application of the payments or the rule of law to be applied. The defendant proved the payments in June under the circumstances mentioned. I think they were payments on the plaintiffs' account, and that the judge of the municipal court erred in depriving the defendant of the results of the proof, and therefore I think the judgment appealed from should be reversed. Code Civil Proc. § 3063.